USCA1 Opinion

 

 February 8, 1993 UNITED STATES COURT OF APPEALS For The First Circuit _________________________ No. 92-1920 UNITED STATES OF AMERICA, Appellee, v. PAUL J. SAVOIE, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _________________________ Robert B. Mann, with whom Mann & Mitchell was on brief, for ______________ _______________ appellant. Edwin J. Gale, First Assistant United States Attorney, with _____________ whom Lincoln C. Almond, United States Attorney, was on brief, for _________________ the United States. __________________________ February 8, 1993 __________________________ SELYA, Circuit Judge. We consider today a golconda of SELYA, Circuit Judge. _____________ challenges mined by defendant-appellant Paul J. Savoie in a relentless effort to ameliorate a sentence imposed in the district court. Concluding, as we do, that appellant is digging in barren soil, we affirm the judgment below. I. BACKGROUND I. BACKGROUND For several years, appellant led a double life. While serving as a policy adviser to the mayor of Pawtucket, Rhode Island, he was also part of a trio of high-ranking city officials who systematically exploited the public trust for personal profit. The other two members of the tarnished troika were the mayor, Brian Sarault, see United States v. Sarault, 975 F.2d 17 ___ _____________ _______ (1st Cir. 1992), and the acting public works director, Louis Simon. Because of the extensive range and reach of the triumvirate's illegal activities, we abjure any attempt to describe the plot at this juncture. We will, however, refer to certain relevant outrages in connection with our canvass of appellant's arguments on appeal. Savoie eventually pleaded guilty to one count of racketeering, see 18 U.S.C. 1962(c) (1988), and two counts of ___ extortion, see 18 U.S.C. 1951 (1988).1 At sentencing, the ___ district court reviewed the presentence investigation report (PSI Report), appellant's objections thereto, and transcripts of grand ____________________ 1The other twenty-seven counts in the indictment, including numerous charges of attempted extortion, conspiracy to commit extortion, and receiving bribes, were dismissed by agreement at the time of sentencing. 2 jury testimony furnished by the government. Appellant chose to present no independent evidence (although he did rely on his description of the offense as related to the probation officer and incorporated in the PSI Report). For the most part, the district court adopted the PSI Report's suggested findings. The court calculated the guideline sentencing range (GSR) at 41-51 months (offense level 22/criminal history category I) and imposed an incarcerative sentence at the top of the range. The court also imposed a three-year term of supervised release, a $7,500 fine, a $150 special felony assessment, and 150 hours of community service. Finally, the court ordered Savoie to make restitution in the sum of $93,476.67. This appeal followed. II. DISCUSSION II. DISCUSSION We have grouped appellant's myriad complaints under four headings. We discuss them sequentially. A. The Role-in-the-Offense Adjustment. A. The Role-in-the-Offense Adjustment. __________________________________ The sentencing guidelines mandate a three-level upward adjustment if "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. 3B1.1(b) (Nov. 1991). Appellant claims that the district court erred in relying on this proviso. In this case, the criminal activity was extensive enough to satisfy the guideline. The only cognizable question, then, is whether the sentencing court erred in determining that appellant was a manager or supervisor of the ring. Where, as 3 here, the sentencing court's decision to apply a role-in-the- offense adjustment is factbound, we review the determination only for clear error. See United States v. Dietz, 950 F.2d 50, 52 ___ _____________ _____ (1st Cir. 1991); United States v. Diaz-Villafane, 874 F.2d 43, 48 _____________ ______________ (1st Cir.), cert. denied, 493 U.S. 862 (1989). _____ ______ In making a role-in-the-offense determination, the sentencing court need not wear blinders but may look beyond the count of conviction to the whole of the defendant's relevant conduct. See United States v. Ruiz-Batista, 956 F.2d 351, 353 ___ _____________ ____________ (1st Cir.), cert. denied, 113 S. Ct. 105 (1992); see also _____ ______ ___ ____ U.S.S.G. Ch. 3, Pt.B, intro. comment. Managerial status may attach if there is evidence that a defendant, in committing the crime, exercised control over, or was otherwise responsible for overseeing the activities of, at least one other person. See, ___ e.g., United States v. Veilleux, 949 F.2d 522, 524 (1st Cir. ____ _____________ ________ 1991); United States v. Akitoye, 923 F.2d 221, 227 (1st Cir. _____________ _______ 1991); United States v. Fuller, 897 F.2d 1217, 1220-21 (1st Cir. _____________ ______ 1990). The evidence of such control need not be direct. See ___ Diaz-Villafane, 874 F.2d at 48 (observing that felons are ______________ "unlikely to make much use of position descriptions or organizational charts"). Where numerous participants are involved, or the criminal activity is otherwise extensive, the court must often make hierarchical distinctions between those at the very top of the criminal enterprise (the organizers or leaders) and those who, while in positions of executive authority, are lower on the totem pole (the managers or 4 supervisors). In making such fine distinctions, the indicia of executive status include such things as the defendant's role in recruiting accomplices, the degree and nature of the defendant's participation in planning and implementing the offense, the defendant's exercise of decisionmaking authority, and the defendant's level of remuneration relative to other participants (including the presence or absence of a claimed right to a share of the crime's fruits). See U.S.S.G. 3B1.1, comment. (n.3); ___ see also United States v. Sostre, 967 F.2d 728, 733 (1st Cir. ___ ____ ______________ ______ 1992); United States v. Panet-Collazo, 960 F.2d 256, 261 (1st _____________ _____________ Cir.), cert. denied, 113 S. Ct. 220 (1992). _____ ______ Here, the record is fairly bursting at the seams with evidence buttressing the inference of managerial status. In addition to extorting funds himself, appellant used internuncios (e.g., Joseph Stifano, Robert Langlois) as conduits for obtaining ____ bribes;2 manipulated Pawtucket's highway director (Ron Lieto) in order to extract free services for himself from a contractor doing business with the City; gave occasional directions to his fellow triumvir, Louis Simon; and, in general, as the district judge aptly put it, "made some rather significant decisions, including the decision of how much [would be demanded] and from whom [it would be extorted]." We are completely unmoved by appellant's plea that he ____________________ 2The RICO count to which appellant pleaded described twenty- four separate racketeering acts. Act No. 17, described infra _____ note 6, is an excellent example of how appellant used go- betweens. 5 was merely a footsoldier in Mayor Sarault's iniquitous army. A defendant need not be the highest ranking member of a criminal troupe in order to be a manager or supervisor. Indeed, the applicable guideline provision stresses that managerial role adjustments, as opposed to other upward role-in-the-offense adjustments, apply to defendants who were managers or supervisors, but not organizers or leaders. See U.S.S.G. ___ ___ 3B1.1(b). In other words, Sarault's acknowledged status as the commander-in-chief is not in any sense inconsistent with the court's finding that appellant was his lieutenant. See, e.g., ___ ____ United States v. Iguaran-Palmar, 926 F.2d 7, 10 n.1 (1st Cir. _____________ ______________ 1991). We will not paint the lily. Appellant was a prime mover in a pervasive pattern of municipal corruption lasting for several years. He gave orders, participated in setting policy, made decisions, and shared handsomely in the booty. The evidence here is more than sufficient to ground the district court's finding that appellant served the ring in a managerial capacity. See United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992) ___ _____________ _______ (holding that "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous"); Diaz-Villafane, 874 F.2d at 49 (similar; ______________ discussing role-in-the-offense adjustments). B. The Restitution Order. B. The Restitution Order. _____________________ As part of the Victim and Witness Protection Act of 1982 (VWPA), Congress authorized district courts to order that 6 convicted defendants make restitution to victims. See 18 U.S.C. ___ 3556, 3663, 3664 (1988 & Supp. 1990).3 The federal sentencing guidelines themselves require such orders in many circumstances. See U.S.S.G. 5E1.1. In this instance the ___ district court ordered restitution, directing that appellant repay, in installments, a total of $93,476.67.4 Appellant attacks the order on three grounds. He is shooting blanks. 1. The Computation. The VWPA provides that, in 1. The Computation. _______________ determining the size of a restitution order, a court must consider, among other things, "the amount of the loss sustained by any victim as a result of the offense." 18 U.S.C. 3664(a). When this amount is disputed, the government bears the burden of establishing it by a preponderance of the evidence. See 18 ___ U.S.C. 3664(d). Because a determination of victim loss is fact-intensive, we review it only for clear error. See United ___ ______ States v. Teehee, 893 F.2d 271, 273-75 (10th Cir. 1990). ______ ______ The law cannot be blind to the fact that criminals rarely keep detailed records of their lawless dealings, totalling up every column and accounting for every misbegotten dollar. Hence, the preponderance standard must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact ____________________ 3Until November 1, 1986, the last two of these sections were codified at 18 U.S.C. 3579 & 3580, respectively. 4Of this amount, $89,876.67 represented restitution to the City of Pawtucket while the remainder represented restitution to other victims. Savoie does not challenge the latter component of the restitution order. 7 measurements will not preclude a trial court from ordering restitution. See United States v. Hand, 863 F.2d 1100, 1104 (3d ___ ______________ ____ Cir. 1988); see also S. Rep. No. 532, 97th Cong., 2d Sess. 31, ___ ____ reprinted in 1982 U.S.C.C.A.N. 2515, 2537 (explaining that "where _________ __ the precise amount owed is difficult to determine, [the VWPA] authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim"). In this case, appellant contends that the restitution order is invalid because the court's recapitulation of losses to victims lacks an adequate evidentiary foundation. We disagree. The racketeering count to which appellant pleaded guilty enumerated twenty-four racketeering acts. The computation of victim loss followed this roadmap. The district court scrutinized transcripts of grand jury testimony designed to document the aggregate amount of money involved in each episode. The court then attempted to ascertain how much of the extorted money appellant pocketed.5 To be sure, reconstructing the tally was not a black- and-white proposition. There were points at which the guideposts became blurred and shadings of gray emerged but on the whole, the available evidence was adequate to the task. In some instances, there were specific percentages or amounts described ____________________ 5We take no view on whether, in these circumstances, restitution was necessarily limited to what appellant himself pocketed. 8 in the testimony. In other instances, the court's calculation rested on testimony establishing the coconspirators' general intent about how the spoils should be divided. In every instance, the record contained, at a bare minimum, a plausible basis on which to predicate reasonable estimates or approximations. No more was exigible. Given the district court's meticulous, act-by-act reconstruction of the amounts extorted, and the court's founded estimates of the sums retained by appellant, we cannot say that the court erred in compiling the overall loss amount.6 ____________________ 6While a complete catalog of record support for the victim loss calculation would trespass unduly on the reader's indulgence, we sketch, by way of representative illustration, the evidence relating to two racketeering acts. A. Act No. 15. A vendor testified before the grand A. Act No. 15. ___________ jury that he paid appellant a ten percent cash kickback on all sales his company made to the City. The vendor reported gross sales to the City of $6,043.62 in 1988, $34,313.53 in 1989, $40,518.91 in 1990, and $27,459.85 in 1991. Because he stopped making payments after Sarault was arrested in June of 1991, the vendor estimated that the kickbacks for that year were roughly equivalent to five percent of annual sales. This evidence, coupled with the eminently reasonable assumption that the amounts in question could otherwise have been subtracted from the inflated prices charged to the City, provides sufficient support for the district court's $9,460 victim loss calculation. The record also supports a conclusion that appellant retained one hundred percent of these kickbacks. The vendor stated that he paid the money to Savoie, and other testimony indicates, unlike in other instances, that neither Sarault nor Simon received a dime. B. Act No. 17. Langlois told the grand jury that B. Act No. 17. ___________ appellant asked him to relay a message to a property owner who wanted a zoning variance. The message, in brief, was that the owner's "problem" could be solved if the wheels of government were lubricated to the tune of $5,000. The owner accepted the offer, received the variance, and paid the bribe to Langlois. Langlois then brought the money to appellant. Because one of the ringleaders told the grand jury that "Paul [Savoie] normally took 9 2. Ability to Pay. In fashioning a restitution order, 2. Ability to Pay. ______________ a sentencing court does not function merely as a type of judicial abacus, toting up the amount of loss and writing down the appropriate figure. The court must also "consider . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. 3664(a). Noting that the court below made no specific findings with regard to these considerations, appellant asserts that the restitution order must fall. We review this claim of legal error de novo. See St. Cyr, 977 F.2d at 701. __ ____ ___ _______ There has been considerable debate over when, if ever, the VWPA may require a restitution-ordering court to make explicit findings concerning a defendant's financial condition. At least four circuits have held that specific findings are not required in this general context. See United States v. ___ ______________ Cannizzaro, 871 F.2d 809, 810-12 (9th Cir.), cert. denied, 493 __________ _____ ______ U.S. 895 (1989); United States v. Mahoney, 859 F.2d 47, 49-50 _____________ _______ (7th Cir. 1988); United States v. Purther, 823 F.2d 965, 969 (6th _____________ _______ Cir. 1987); United States v. Golomb, 811 F.2d 787, 791 (2d Cir. _____________ ______ 1987). Five other circuits, invoking supervisory powers, have told district courts that specific findings are often needed to facilitate appellate review. See United States v. Owens, 901 ___ ______________ _____ F.2d 1457, 1459-60 (8th Cir. 1990); United States v. Hairston, _____________ ________ ____________________ from 20 [percent] to a third" of the payoffs for himself, the district court's finding that appellant received $1,000 from this act had a sufficient evidentiary predicate. 10 888 F.2d 1349, 1352-53 (11th Cir. 1989); United States v. ______________ Patterson, 837 F.2d 182, 183-84 (5th Cir. 1988); United States _________ _____________ v. Bruchey, 810 F.2d 456, 459 (4th Cir. 1987); United States v. _______ _____________ Palma, 760 F.2d 475, 480 (3d Cir. 1985).7 We have not yet _____ spoken to this question. To resolve this appeal, we must take only one small step along the path. We rule that a district judge need not make open-court findings on the statutory factors when issuing a restitution order so long as the record on appeal reveals that the judge made implicit findings or otherwise adequately evinced his consideration of those factors. After all, the VWPA itself demands no more than that the district court "consider" the factors enumerated therein. 18 U.S.C. 3664(a). The statute makes no mention of mandatory findings a circumstance that we believe is consistent with Congress's stated desire not unduly to complicate or prolong the sentencing process through the VWPA's restitutionary provisions. See 18 U.S.C. 3663(d). Whatever ___ may be the rule in a more extreme case a matter on which we do not opine we believe that the absence of express findings is not fatal in cases in which the record clearly indicates that the ____________________ 7The Tenth Circuit has sent mixed signals on this issue. After initially favoring explicit findings, the court has since repudiated the need for such findings and stated that a district judge only need consider the defendant's financial condition. Compare United States v. Hill, 798 F.2d 402, 406-07 (10th Cir. _______ _____________ ____ 1986) (requiring specific findings) with United States v. ____ ______________ Morrison, 938 F.2d 168, 171-72 (10th Cir. 1991) (not requiring ________ specific findings) and United States v. Rogat, 924 F.2d 983 F.2d ___ _____________ _____ 983, 986 (10th Cir.) (same), cert. denied, 111 S. Ct. 1637 _____ ______ (1991). 11 court gave thought to the requisite factors. Here, we are satisfied that the court below duly considered the statutory factors. The PSI Report contained a lengthy discussion of them. The district court explicitly adopted the PSI Report's findings and, despite the statutory burden placed upon him, see 18 U.S.C. 3664(d), appellant never ___ offered evidence suggesting that his financial condition constituted a barrier to effecting full restitution. Finally, the information in the record does not suggest that the restitution order, payable in installments, is beyond appellant's reach, given his accessible assets and earning capacity. In such circumstances, there is no basis for assuming that the district court ignored the statutory mandate by failing to mull appellant's financial situation. 3. The Civil Settlement. The VWPA provides that 3. The Civil Settlement. ______________________ courts "shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation." 18 U.S.C. 3663(e)(1). On July 24, 1992, three days before he was sentenced, appellant signed an agreement with the City of Pawtucket, settling Pawtucket's claims against him for $52,000, payable over time. Appellant asserts that by negotiating this settlement he effectively fulfilled (or, at least, set a ceiling on) his restitutionary obligations vis-a-vis Pawtucket's losses. We afford plenary review to the web of essentially legal questions surrounding the settlement agreement's effect. See St. ___ ___ Cyr, 977 F.2d at 701. ___ 12 At the outset, we remark that the settlement agreement upon which appellant relies is a particularly poor vehicle for conferring special treatment: its scope is limited; its language skirts any admission of responsibility;8 and the promise it memorializes is, at present, no more than that an executory promise to pay. No money has yet changed hands and the planned future payments extend over a protracted period. Beyond these infirmities, the sockdolager is that the settlement between Savoie and the City concerns potential civil liability. But, the sort of restitution imposed below is not a civil affair; it is a criminal penalty meant to have deterrent and rehabilitative effects. See Kelly v. Robinson, 479 U.S. 36, ___ _____ ________ 49 & n.10 (1986). Private parties cannot simply agree to waive the application of a criminal statute. See, e.g., Hairston, 888 ___ ____ ________ F.2d 1153 (holding that a civil settlement did not necessarily preclude a restitution order under the VWPA because the penal purpose of that act was not a litigated issue in the civil case); United States v. Rico Indus., Inc., 854 F.2d 710, 715 (5th Cir. _____________ __________________ 1988) (similar), cert. denied, 489 U.S. 1078 (1989). Because the _____ ______ law will not tolerate privately negotiated end runs around the criminal justice system, we reject appellant's claim that the district court could no longer order him to make restitution. At ____________________ 8By its terms, the settlement is restricted to claims by the City arising out of "extortion by Louis Simon and Brian J. Sarault." The agreement recites that appellant "denies . . . liability and disputes the legal effect of the alleged events." In turn, the City agrees that the settlement "is not to be construed as an admission of responsibility on the part of Paul Savoie." 13 the same time and for the same reason, we reject appellant's related claim that the settlement figure capped the amount of restitution that could be ordered. Appellant also contends that the settlement amount should at least have been set off against the district court's restitution figure. The statute itself dispatches this contention. The VWPA contemplates setting off amounts already paid under a restitution order against amounts later recovered in civil proceedings. See 18 U.S.C. 3663(e)(2). There is no ___ mention of setoffs operating in the opposite direction. What is more, the setoff provision is based upon actual payments rather than promises to pay at some future date(s). We have said enough. In the circumstances of this case, appellant has failed to prove that the restitution order is "with respect to a loss for which the victim has received or is to receive compensation." 18 U.S.C. 3663(e)(1). The order may stand.9 C. The Fine. C. The Fine. ________ Appellant's next foray implicates the fine levied against him. He asseverates that, in imposing the fine, the district court shirked its statutory duty. Appellate courts review the imposition of fines under the sentencing guidelines by resort to an abuse-of-discretion rubric. See United States v. ___ _____________ ____________________ 9This is not to say, however, that appellant must pay the piper twice. We see no reason why, in the circumstances of this case, any payments made under the restitution order, so long as destined for the City of Pawtucket, should not also be credited against appellant's liability under the settlement agreement. 14 Rivera, 971 F.2d 876, 895 (2d Cir. 1992); United States v. ______ ______________ Washington-Williams, 945 F.2d 325, 326 (10th Cir. 1991). We ___________________ discern no abuse here.10 Following Congress's lead, see 18 U.S.C. 3553(b) ___ (1988), the sentencing guidelines provide that the district court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is unlikely to become able to pay any fine." U.S.S.G. 5E1.2(a). We take this language to mean exactly what it says: under the guidelines, a fine is the rule and it is the defendant's burden to demonstrate that his case is an exception. See United States v. ___ _____________ Hickey, 917 F.2d 901, 907 (6th Cir. 1990); United States v. ______ ______________ Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 _____ _____ ______ (1989). Since appellant offered no significant evidence on the "inability to pay" issue, there is no basis for setting aside the $7,500 fine a fine pegged at the nadir of the applicable guideline range for the offense of conviction. Appellant's two related arguments are similarly unavailing. First, the district court's failure to make express findings in open court concerning appellant's financial condition and prospects does not necessitate reversal. See, e.g., United ___ ____ ______ States v. Wilfred American Educ. Corp., 953 F.2d 717, 719-20 (1st ______ ____________________________ Cir. 1992) (interpreting similar language in predecessor statute as neither requiring findings nor allowing an appellate tribunal ____________________ 10Because the claim is meritless, we need not decide whether appellant waived this issue by failing to raise it below in sufficient detail. 15 to presume that a district court ignored relevant evidence in the record); United States v. Pilgrim Market Corp., 944 F.2d 14, 22- _____________ ____________________ 23 (1st Cir. 1991) (similar). Second, appellant's assault on the viability of U.S.S.G. 5E1.2(i) (a guideline dealing with fines imposed to cover the cost of imprisonment) is a red herring. The record contains no indication that the district court imposed the $7,500 fine pursuant to that provision. D. Compliance with Fed. R. Crim. P. 32(c)(3)(D). D. Compliance with Fed. R. Crim. P. 32(c)(3)(D). ____________________________________________ When a defendant alleges that a PSI Report contains an identified inaccuracy, the district court must either make a finding concerning the allegation or make a determination that no finding is necessary because the matter will not be taken into account at sentencing. See Fed. R. Crim. P. 32(c)(3)(D). The ___ court must also append a written record of any such findings or determinations to the PSI Report. Id. This protocol serves the ___ dual purpose of protecting the defendant's due process rights and supplying a clear record for future proceedings (say, appellate review or consideration for parole). See, e.g., United States v. ___ ____ _____________ Levy, 897 F.2d 596, 599 (1st Cir. 1990); United States v. ____ _____________ Gerante, 891 F.2d 364, 367 (1st Cir. 1989); United States v. _______ ______________ Bruckman, 874 F.2d 57, 63-64 (1st Cir. 1989). Accordingly, we ________ have insisted on strict compliance with the rule. See United ___ ______ States v. Hanono-Surujun, 914 F.2d 15, 18 (1st Cir. 1990) ______ ______________ (collecting cases). That we are firm in requiring compliance with Rule 32(c)(3)(D) does not mean, however, that we habitually ignore the 16 realities of particular situations or divorce our consideration from the circumstances of actual cases. The opposite is true. See, e.g., United States v. Santana-Camacho, 931 F.2d 966, 969-70 ___ ____ _____________ _______________ (1st Cir. 1991); Levy, 897 F.2d at 598-99; Bruckman, 874 F.2d at ____ ________ 64-66; United States v. Serino, 835 F.2d 924, 932 (1st Cir. ______________ ______ 1987). Thus, the record in a given case may show that the court has "ma[d]e 'implicit' findings on disputed factual questions by accepting the government's recommendations at the sentencing hearing." United States v. Wells Metal Finishing, Inc., 922 F.2d _____________ ___________________________ 54, 58 (1st Cir. 1991). The circumstances here are analogous to those that confronted the Wells court. The judge presented both the _____ prosecutor and defense counsel with an opportunity to voice their concerns anent the contents of the PSI Report. He heard arguments from both sides about disputed matters. After argument, the judge accepted the government's sentencing recommendations and then indicated in writing, as part of the judgment, that he had "adopt[ed] the factual findings . . . in the presentence report." We think that this writing is tantamount to the slightly more elaborate notation made by the judge in Wells, 922 F.2d at 58, and that the purposes of Rule 32 _____ were equally served. The only logically inferable conclusion is that the court rejected each and all of appellant's fact-based challenges to the PSI Report. See id.; see also United States v. ___ ___ ___ ____ _____________ Cruz, ___ F.2d ___, ___ (1st Cir. 1992) [No. 91-1047, slip op. at ____ 17 12-15]; Gerante, 891 F.2d at 367; Bruckman, 874 F.2d at 64. In _______ ________ short, the district court made adequately particularized findings, and created a minimally sufficient written memorialization of those findings, when it expressly adopted the facts as limned in the PSI Report, thereby necessarily finding against appellant on all disputed matters of fact. Fed. R. Crim. P. 32(c)(3)(D) was not violated. III. CONCLUSION III. CONCLUSION We need go no further.11 Although appellant parades a battery of challenges before us, none pass muster. The judgment below must, therefore, be Affirmed. Affirmed. ________ ____________________ 11Appellant further hints, without providing any detail, that the sentencing court may have failed to "state in open court the reasons for its imposition of the particular sentence" as required by 18 U.S.C. 3553(c) (1988). Read in conjunction with the pointed comments delivered by the district court at sentencing, this suggestion borders on the frivolous. At any rate, we will not attempt to fathom what appellant may have in mind, for it is our established rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 _____________ _______ F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990). _____ ______ 18