1 F.3d 1231
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
Zolton PHILLIPS, Defendant, Appellant.
 No. 92-1806.
 United States Court of Appeals,
First Circuit.
 Aug. 13, 1993.
 
 1
 Appeal from the United States District Court for the District of Massachusetts
 
 
 2
 Warren R. Thompson, by Appointment of the Court, for appellant.
 
 
 3
 Mark J. Balthazard, Special Assistant United States Attorney, with whom A. John Pappalardo, United States Attorney, was on brief for appellee.
 
 
 4
 D.Mass.
 
 
 5
 AFFIRMED.
 
 
 6
 Before Torruella and Stahl, Circuit Judges, and Burns,* Senior District Judge.
 
 
 7
 BURNS, Senior District Judge.
 
 
 8
 Phillips appeals the district court's order of restitution and the district court's denial of his request to substitute counsel. Phillips also asks this court to set aside his plea of guilty because it was involuntary.
 
 
 9
 We have jurisdiction under 28 U.S.C. Sec. 1291 (1988).
 
 BACKGROUND
 
 10
 On February 24, 1992, Phillips pleaded guilty to one count of bank fraud in violation of 18 U.S.C. Sec. 1344 for making materially false statements when obtaining a $5 million loan from First American Bank (FAB) to establish a mini-storage facility. On May 22, 1992, the court sentenced Phillips to 24 months imprisonment[1] and ordered Phillips to pay to the Federal Deposit Insurance Corporation (FDIC) in its capacity as receiver of FAB the sum of $3,520,100 within three years of his release from prison.
 
 DISCUSSION
 
 11
 Phillips contends the district court erred when it denied his request to substitute counsel prior to trial. Phillips also states he received ineffective assistance from his counsel and, therefore, this court should set aside his plea of guilty because it was involuntary. Phillips further asserts the district court erred when it ordered him to pay restitution to FAB for losses that were not caused by his conduct and when it set an amount of restitution that was per se unreasonable.
 
 SUBSTITUTION OF COUNSEL
 
 12
 Phillips contends the court erred when it refused to substitute counsel after Phillips asked the court to do so by letter dated February 10, 1992; however, perusal of Phillips's letter reflects he merely expressed his desire to avoid delay of trial and his concern about the timeliness of various motions filed and to be filed on his behalf. On February 14, 1992, the parties appeared before the court to dispose of certain pretrial matters. At that time (ten days before trial was scheduled to begin), the court asked Phillips whether he wanted to elaborate on his reasons for writing the letter; after briefly conferring with his attorney, Phillips told the court he was "pleased to proceed." The court asked Phillips a second time whether he wanted to discuss any matters pertaining to his letter. Again, Phillips did not complain about his attorney nor did he request a change of counsel; in fact, the record does not reflect Phillips requested a change of counsel at any time prior to entering his plea.[2] We find, therefore, Phillips's contention that the court denied his request to substitute counsel has no factual basis.
 
 INVOLUNTARY PLEA
 
 13
 Phillips asserts his sentence should be set aside because of his court-appointed counsel's ineffective assistance. Phillips specifically refers to counsel's alleged misrepresentations, untimeliness in filing motions, failure to investigate, and lack of preparation on the day of trial.
 
 
 14
 We generally do not consider such claims on direct appeal because issues regarding ineffective assistance of counsel "normally require 'the resolution of factual issues as well as inquiries into other evidentiary matters that cannot effectively be handled for the first time by a court of appeals.' " United States v. Hallock, 941 F.2d 36, 43 (1st Cir. 1991). The matter before us is no exception; thus, we decline to consider Phillips's contentions of ineffective assistance of counsel on direct appeal.
 
 
 15
 At oral argument, Phillips also contended his plea of guilty should be set aside because he was not informed by counsel or the court at the time he pleaded guilty that restitution could be imposed as part of his sentence. We will briefly address this issue even though Phillips did not make the argument in his briefs. Fed. R. Crim. P. 11(c)(1) provides that the court must inform defendant of the maximum penalties, which includes the possibility of restitution, before defendant enters a plea of guilty. The record shows the district court reviewed the terms of the plea agreement in open court and asked Phillips whether he understood the government was recommending payment of restitution in an amount to be determined later. Phillips acknowledged the terms of the plea agreement and indicated he understood the court did not have to follow the government's recommendations. We find, therefore, Phillips has no basis for his assertion that he was unaware restitution could be imposed as part of his sentence.
 
 RESTITUTION
 
 16
 Phillips contends the loss to FAB was not wholly caused by his @conduct; therefore, the court erred when it ordered him to pay restitution. Phillips also asserts that even if restitution were appropriate, the amount of restitution ordered by the court was incorrect and per se unreasonable.
 
 
 17
 Responsibility for loss.
 
 
 18
 Phillips contends FAB's loss was caused by (1) FAB's reliance on the property valuation of an independent appraiser as well as Phillips's misrepresentations when the loan was made, (2) FAB's mishandling of Phillips's business after it took over, and (3) economic forces beyond the control of either Phillips or FAB.
 
 
 19
 Under the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. Secs. 3663-64 (1988 & Supp.1990), restitution is limited to "the loss caused by the specific conduct that is the basis of the ... conviction." Hughey v. United States, 495 U.S. 411, 413 (1990). We review a determination of victim loss for clear error. United States v. Savoie, 985 F.2d 612, 617 (1st Cir. 1993).
 
 
 20
 At the first sentencing hearing, the government presented evidence (business records and affidavits) showing the devaluation of the property was a result of Phillips's bad faith, mismanagement, and looting of the mini-storage business. The court granted Phillips a continuance to allow him to produce further evidence to support his position that restitution was inappropriate. At the second sentencing hearing, the court rejected Phillips's denial of responsibility for FAB's loss.
 
 
 21
 When he pleaded guilty, Phillips admitted to providing FAB with materially false statements (e.g., omission of his previous filing for bankruptcy) to obtain the loan to establish a mini-storage facility. Phillips argues, however, the diminution of the property's value was due primarily to the bad management of the bankruptcy trustee and FAB, who, according to Phillips, managed the property jointly even though the trustee had legal control.
 
 
 22
 In response, the government points out FAB only had possession of the property for a few days from approximately January 6 to January 17, 1989, and began foreclosure proceedings during that time.[3] On or about January 17, 1989, Phillips filed for bankruptcy once again, and the trustee in bankruptcy took control of the property shortly thereafter. In August 1989, the property was sold at auction by the trustee in bankruptcy; Phillips points out the property's value had decreased considerably by then.[4] The sum of $3,520,100 represents the difference between the $5 million FAB originally loaned Phillips for establishment of the mini-storage facility and the amount FAB received for the property.
 
 
 23
 The court rejected Phillips's contentions and found the government's arguments persuasive of Phillips's ultimate responsibility for FAB's loss. After reviewing the record, we concur with the court's conclusion that FAB would not have incurred the loss "but for" the loan to Phillips, a loan Phillips obtained by making material misrepresentations. We, therefore, do not find the court's conclusion clearly erroneous.
 
 
 24
 Amount of loss.
 
 
 25
 Phillips further argues that even if restitution were appropriate, the court incorrectly calculated the loss. Phillips points out the correct calculation of loss would be the value of the property "less the value (as of the date the property is returned) of any part of the property that is returned."
 
 
 26
 18 U.S.C. Sec. 3663(b)(1). The value of the property is its worth on the date title is transferred. United States v. Smith, 944 F.2d 618, 625 (9th Cir. 1991), cert. denied, 112 S.Ct. 1515 (1992). When the amount of loss is disputed, "the government bears the burden of establishing it by a preponderance of the evidence." Id.
 
 
 27
 In Smith, the bank took title to certain property when Smith defaulted on loans. Before selling the property, the bank held it for a long period in a declining market. The Smith court found the property should have been valued on the date the bank "had the power to dispose of the property and receive compensation," id., and the loss recognized by the court should have been reduced by that amount. In the matter before us, FAB took possession of the property in early January and began foreclosure proceedings.[5] On or about January 17, 1989, Phillips filed for bankruptcy; the trustee in bankruptcy retained control over the property until foreclosure proceedings were completed in August 1989. Unlike the bank in Smith, FAB had little or no time to dispose of the property in early January since Phillips filed bankruptcy almost immediately after FAB took physical possession of the property.
 
 
 28
 After considering the circumstances, the court concluded Phillips was responsible for FAB's loss totalling $3,520,100, the amount still owing after the property at the heart of the loan was auctioned by the trustee in bankruptcy.[6] We do not find the district court's conclusion clearly erroneous.
 
 
 29
 Reasonability of restitution order.
 
 
 30
 Phillips also contends the court's order for restitution was per se unreasonable because the court did not consider all relevant factors required by statute when it ordered payment of restitution. Phillips bases his argument specifically on the court's failure to consider Phillips's ability to pay the restitution ordered.
 
 
 31
 The VWPA does not prohibit a sentencing court from imposing restitution upon a defendant who is indigent at the time. United States v. Brown, 744 F.2d 905, 911 (2d Cir.), cert. denied, 469 U.S. 1089 (1984). A court must, however, "consider ... the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. Sec. 3664(a). See, e.g., United States v. Ramilo, 986 F.2d 333, 336 (9th Cir. 1993). In this circuit, a sentencing court is not required to make "open-court findings on the statutory factors when issuing a restitution order so long as the record on appeal reveals that the judge made implicit findings or otherwise adequately evinced his consideration of those factors." Savoie, 985 F.2d at 11.
 
 
 32
 The record reflects Phillips brought the requisite factors to the attention of the court in his sentencing memorandum and at sentencing.[7] The court acknowledged these factors and concluded Phillips was sufficiently resourceful to be capable of paying all, or at least a substantial portion, of the restitution within three years of his release from prison. The court made no specific findings to support its conclusions; the absence of express findings, however, is not fatal when the record reflects the court gave thought to the requisite factors. Id.
 
 
 33
 When the court ordered payment of restitution, it noted that Phillips was smart and resourceful. The court further remarked that Phillips made a great deal of money once, and, in its opinion, Phillips was capable of making a great deal of money again. Cf. Smith, 944 F.2d at 623 (defendant ordered to pay $12.8 million to FSLIC within five years of his release from prison based on the court's observation that defendant demonstrated in the past his ability to accumulate assets in this amount of restitution); United States v. Rogat, 924 F.2d 983, 986 (10th Cir.), cert. denied, 111 S.Ct. 1637 (1991) (indigent defendants were ordered to pay restitution of approximately $2.5 million based on the fact both were "able, intelligent, well-educated, talented business people, who do have substantial capacity to earn money now or in the future, and, therefore, do have ability to make restitution"). The VWPA itself demands only that the sentencing court "consider" the factors enumerated therein, Savoie, 985 F.2d at 11; the record reflects this sentencing court had before it information bearing on these factors. Although another court may have reached a different conclusion,[8] we do not find the sentencing court abused its discretion. To paraphrase Judge Selya in Savoie, "[w]e have said enough," maybe even too much.
 
 CONCLUSION
 
 34
 Based on the foregoing, we find the district court did not err when it ordered Phillips to pay restitution in the amount of $3,520,100.
 
 
 35
 Affirmed.
 
 
 
 *Of the District of Oregon, sitting by designation.
 
 
 [1]
 Phillips's conduct did not fall under the United States Sentencing Guidelines; thus, the district court did not impose a term of supervised release
 
 
 [2]
 When Phillips pleaded guilty on February 24, 1992, he told the court his attorney had "been very good."
 
 
 [3]
 Phillips does not specifically argue the value of the property diminished between January 6 and January 17, 1989
 
 
 [4]
 The district court noted it was not the proper forum in which to initiate a claim of mismanagement against the trustee in bankruptcy
 
 
 [5]
 Again, we note Phillips does not specifically argue the value of the property diminished between January 6 and January 17, 1989
 
 
 [6]
 Although Phillips argues the worth of the property was greater when he relinquished control, this appellate court is not the proper forum in which to challenge the bankruptcy trustee's competency in controlling or disposing of the property
 
 
 [7]
 The probation officer also addressed Phillips's future money-earning prospects in the PSR
 
 
 [8]
 According to Phillips, he carries a staggering debt of more than $36 million after being denied discharge in bankruptcy. The family's current income is apparently limited to his wife's earnings as a nurse's aide and the pittance Phillips may be able to earn while imprisoned. To pay the restitution alone, Phillips will have to make profits greatly exceeding $3.5 million (legitimately, we presume) within three years of his release from a two-year stint in prison. We note Phillips's resourcefulness in the past does not necessarily promise the same success in the future-at least, we hope not; after all, his past "resourcefulness" led him to this court