UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 99-4519

SCOTT MICHAEL POSNANSKI,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-98-125-L)

Argued: June 9, 2000

Decided: July 17, 2000

Before MURNAGHAN, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Laurence J. Bolon, Chicago, Illinois, for Appellant.
Andrew Clayton White, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United
States Attorney, Andrew G.W. Norman, Assistant United States
Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Scott Michael Posnanski appeals an order of the district court directing him to pay $55,006.07 in restitution to his former employer, International Auto Auctions ("IAA"), pursuant to the Mandatory Victim Restitution Act (MVRA) of 1996. See 18 U.S.C.A. § 3663A (West Supp. 2000). Posnanski argues that the amount of restitution which was imposed to compensate the victim of his crime for assisting the United States in the investigation and prosecution of his offense was erroneous because it was based primarily on hearsay evidence and it involved complex issues of fact, making the MVRA inapplicable. We affirm.

I.

From April to September 1996, Posnanski and a co-conspirator executed a scheme to defraud IAA. Posnanski, a computer network analyst and programmer for IAA, manipulated the company's computer system to produce checks drawn on IAA's bank account with NationsBank.

He and his co-conspirator produced approximately 416 checks, totaling $16,811,580, made payable to fictitious corporations that they established using false identities. Posnanski then attempted to conceal his manipulation of IAA's computer system. The scheme went awry when NationsBank notified IAA of a suspicious deposit. Federal authorities arrested Posnanski's co-conspirator, who then implicated him in the scheme. Posnanski subsequently pled guilty to bank fraud. See 18 U.S.C.A. §§ 2, 1344 (West 2000).

At sentencing, the Government contended that IAA was entitled to $58,993.20 in restitution based on an estimate prepared by the company. In support of the restitution claim, the Government presented

2

testimony from Alison Adams, Director of Treasury for IAA, regarding the expenses IAA incurred as a result of assisting in the investigation and prosecution of the offense. Adams testified that she was the "point person" for the company, coordinating all requests from the United States Attorneys. J.A. T024. She provided a detailed account of the steps taken by IAA in the aftermath of the fraud, most of which were motivated, at least in part, by requests from the Government. IAA put a bank fraud watch on its account with NationsBank and all checks (some 700-800 per day) had to be verified before passing through the system. IAA also audited its computer system and records in an attempt to determine exactly what had happened. In addition, it trained Government investigators in the use of its system. Also, at the behest of the Government, IAA officials attended numerous meetings with investigators and court proceedings.

Adams estimated that IAA incurred $58,993.20 in expenses in the investigation and prosecution of the offense. She stated that no contemporaneous time records had been kept because all of the employees involved were salaried. However, because she was the "point person" for the company, she had firsthand knowledge of who had participated in the investigation and prosecution activities. Whenever possible, she obtained estimates of the time spent on such activities directly from the employees involved. If an employee was not available, Adams used her best estimate based on the activities undertaken and the information elicited, or spoke with the individual's supervisor or other people involved in the same or similar activities.

Adams testified that there were no notes from these conversations because when she talked to these people she was usually working directly on her spreadsheet. She used actual wages from the employees' IRS documents to determine each employee's hourly wage and then added 20 percent to account for other employment costs. She provided documentation for travel expenses and produced receipts for check stock and stop payment orders from IAA's bank account that were associated with the fraud.

Adams' estimate of the expenses incurred excluded certain overhead costs, such as clerical and secretarial work, and various incidental expenses, including long-distance phone calls, faxes, and shipping

3

charges. Finally, Adams stated that in estimating IAA's expenses, she erred on the conservative side whenever possible.

The sentencing hearing was continued to allow the parties to brief the issue of which expenses the restitution order should encompass. Posnanski objected to various calculations regarding wages and travel expenses. The Government provided more detailed justifications for those calculations and reduced the claim by approximately $4,000. At the continuation of the sentencing hearing, the district court heard brief oral argument and, thereafter, adopted the Government's modified calculation of expenses incurred by IAA as a result of assisting in the investigation and prosecution of the offense. The district court ordered Posnanski to pay $55,006.77 in restitution to IAA.

Posnanski now appeals, arguing (1) that the district court erred in ordering restitution based primarily on hearsay evidence and (2) that the MVRA is inapplicable because the determination of restitution involved complex issues of fact. We disagree.

II.

The MVRA obligates the trial court to order a convicted defendant to pay restitution to his victim in certain cases, including cases in which the defendant has committed a crime against property by fraud. See 18 U.S.C.A. § 3663A(c)(1)(A)(ii). The statute provides that the court shall order the defendant to reimburse the victim for "necessary . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."* Id. § 3663A(b)(4). The court is obligated to order restitution "without consideration of the economic circumstances of the defendant." 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 2000). The probation officer shall include in his presentence report, "to the extent practicable, a complete accounting of the losses to each victim." 18 U.S.C.A. § 3664(a) (West Supp. 2000). The MVRA does not apply

_____

*These "expenses" are one type of compensable "loss" envisioned under the MVRA. See 18 U.S.C.A. 3663A(b). We use the terms "expenses" and "loss" interchangeably here because IAA's "expenses" as a result of Posnanski's crime were the same as its total "loss" in that none of the fraudulent checks were cashed.

4

if the court finds that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C.A. § 3663A(c)(3)(B).

The Government bears the burden of proving the restitution amount by a preponderance of the evidence. See § 3664(e) (West Supp. 2000). The preponderance standard should be applied in a "practical, common-sense way." United States v. Savoie, 985 F.2d 612, 617 (1st Cir. 1993). Further, hearsay testimony may support a claim for restitution as long as it has a "sufficient indicia of reliability." United States v. Newman, 144 F.3d 531, 542 (7th Cir. 1998) (internal quotation marks omitted). "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." Savoie, 985 F.2d at 617.

The district judge enjoys discretion as to the restitutionary amount, with the stipulation that the defendant pay restitution only for losses traceable to the illegal activity. United States v. Henoud, 81 F.3d 484, 488 (4th Cir. 1996). A restitution order may be relatively broad as long as the harm is either a direct result of, or closely related to, the defendant's scheme. See id. at 488.

In general, restitution orders should be affirmed in the absence of an abuse of discretion. See id. at 487. However, the calculation of loss is a question of fact and is reviewed only for clear error. See id. at 490.

A.

Posnanski argues that the district court erred in ordering restitution based primarily on hearsay evidence. He maintains that without documentation to support the time estimates there can be no reasonable degree of accuracy. We disagree. Here, the district court found Adams' testimony to have "sufficient indicia of reliability." The trial judge stated

5

> I personally heard the testimony of I.A.A. Director of Treasury, Allison Adams, and found her to be a competent, careful, credible and fair witness who did not overstate the magnitude of the company's losses. I also found that she and the company had made a good faith systematic effort to provide a detailed backup for the amounts that were claimed. In my view, the testimony put on by Ms. Adams and the company is much more than a rough estimate, but is a reliable good faith, sufficiently-detailed estimate of the amount of expenditures of I.A.A. working with the Government, investigating the fraud and assisting the Government.

J.A. T125. Giving due regard to the determination by the district court of the credibility of witnesses, 18 U.S.C.A. § 3742(e) (West Supp. 2000), we conclude that Adams' testimony satisfied the requirement of providing a "basis for reasonable approximation," and thus it was not an abuse of discretion for the court to order restitution based on her testimony. Savoie, 985 F.2d at 617; see United States v. Futrell, 209 F.3d 1286, 1292 (11th Cir. 2000) (per curiam) (holding that the district court did not abuse its discretion by accepting the Government's reasonable approximation of loss caused by defendant's fraud); see also United States v. Jackson, 155 F.3d 942, 948 (8th Cir. 1998) (holding that, in calculating intended loss in a check writing fraud scheme, the district court did not err in accepting estimates of losses). No doubt it would be preferable for the victim of an offense to keep contemporaneous records of the expenses incurred as a result of aiding in the investigation and prosecution of the offense. However, the plain language of the statute does not impose such a requirement and we decline to impose it ourselves.

Posnanski maintains that it is impossible to determine whether the work done by IAA in the aftermath of the fraud was "necessary." 18 U.S.C.A. § 3663A(b)(4). This argument is without merit. Every indication is that the actions taken by IAA were indeed necessary. For example, it had to undergo daily review of checks clearing through its bank account to ensure that all of the fraudulent checks were recovered. Additionally, the intensive review of its computer system was necessary to determine how such a fraudulent scheme could have been carried out. These were essential components of the Government's success in its prosecution of the offense. In fact, the time spent

6

by IAA officials was motivated, at least in part, by requests from the Government for information and assistance. The United States Attorney indicated that this was a very complicated case, and that without the help of IAA the Government could not have been successful in the investigation and prosecution.

Posnanski also maintains that the lack of independent investigation and verification by the probation department precluded both an independent evaluation of IAA's claimed losses and a proper determination of restitution by the court. We note that the probation officer appears not to have strictly followed the procedure for issuance and enforcement of orders of restitution mandated by 18 U.S.C.A. § 3664. The amount of restitution was not contained in the presentence report and, in fact, the report states that no monetary loss was incurred by IAA. However, this statement was based only on the fact that the defendant was unsuccessful in cashing any of the fraudulent checks. Moreover, Posnanski does not claim that he did not receive notice of the amount of loss being claimed. Therefore, despite the technical deficiency in the presentence report, the error was harmless because Posnanski had notice of the restitution claim and an opportunity to contest it.

B.

Posnanski also argues that the MVRA is inapplicable because the determination of restitution involved complex issues of fact. See 18 U.S.C.A. § 3663A(c)(3)(B). We disagree.

Here, the factual issues were not so cumbersome as to be a burden on the sentencing process. Hearsay is admissible and the district court properly exercised its discretion in accepting the credibility and reliability of the witness supporting the Government's loss calculation. The estimate prepared by Adams and the subsequent revisions by the Government in response to the defendant's objections facilitated the calculation of the loss and served to simplify the sentencing process. There is likewise no evidence that the process was prolonged, as the issue was resolved in two short hearings. Therefore, the district court did not err in applying the MVRA.

III.

We hold that the district court did not err in ordering restitution based primarily on hearsay evidence because it determined that the testimony had "sufficient indicia of reliability" and provided the "basis for reasonable approximation" of the loss suffered by the victim of the fraudulent scheme. Furthermore, the MVRA is applicable because the restitution order does not involve complex issues of fact. Accordingly, we affirm the restitution order of the district court in the amount of $55,006.07 pursuant to 18 U.S.C.A. § 3663A.

AFFIRMED

8