**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Keith SHWAYDER, Michael G. Swan,
and Kevin Orton, Defendants—
Appellants.**

Nos. 01–10156, 01–10176, 01–10186.

D.C. No. CR–96–00288–PMP/RJJ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2002.

Decided Dec. 5, 2002.

Before HUG and BERZON, Circuit Judges, and LASNIK,* District Judge.

* The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

## MEMORANDUM **

Kevin Orton and Michael G. Swan were each convicted of racketeering; RICO conspiracy; conspiracy; and multiple counts of securities fraud, wire fraud, and money laundering. Orton appeals his convictions and sentence, and Orton and Swan both challenge the amount of restitution ordered by the district court. We affirm on all issues discussed in this memorandum.[1] Because the parties are familiar with the facts, we recount them here only as necessary to explain our decision.

### 1. *Issues Relating Only to Orton*

### A. *Sufficiency of the Evidence*

■ Orton maintains that he was never aware of the illegal purpose behind the merger, the payments to brokers, or the accounts and ventures that he created at Swan's instruction. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Orton had the requisite intent to commit the offenses of which he was convicted. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Orton contends that he did not know the illegal purpose of activities involving accounts of various companies that were used to further the fraud scheme. He asserts that he was told by Swan that the 357 Leasing accounts were used for escrow purposes. The government presented testimony, however, that the activity in the 357 Leasing accounts was not consistent with use as an escrow account—the legitimate explanation that Swan allegedly gave Orton for the accounts. The government also presented evidence of the sudden onset of activity in 357 Leasing during the

fraud scheme. The jury could have reasonably inferred that Orton, a trained accountant, would have found such activity questionable.

Further, although Orton testified that he was never an owner of Paramount Securities, the government introduced a document, signed by Orton, establishing that he was the owner. If the jury disbelieved Orton on the ownership issue, it could well have disbelieved everything else he said about Paramount and, more generally, about his knowledge of the other companies' activities.

Orton also maintains that he did not know that the documents filed with the Securities and Exchange Commission contained false or misleading statements. The allegedly false and misleading information consisted of a failure to report the payments sent to stockbrokers. Orton was aware that these payments were made, because he usually sent the payments himself. The jury could reasonably have inferred from the fact that the payments were omitted from the reports Orton helped prepare that Orton must have known that the documents contained false or misleading information and that the payments were illegal.

Additionally, Orton testified at trial that he sent large amounts of cash via Federal Express because Teletek's financial problems and history of bouncing checks forced it to deal in cash frequently and that he stopped using cash payments not because a Currency Transaction Report was generated but because he concluded that dealing in cash was impractical and dangerous. The jury could have disbelieved this testimony as inherently implausible, given that the amounts of the relevant individual

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. In a separate opinion, we resolve the issues in Keith Shwayder's appeal.

bank withdrawals were consistently just below the amount that banks are required to report, and that there are obvious alternatives to sending cash (such as sending certified checks).

Moreover, the jury could also have relied on Orton's testimony regarding his lack of knowledge to *support* the fact that Orton actually had such knowledge. *See United States v. Stauffer*, 922 F.2d 508, 515 (9th Cir.1990); *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir.1981) ("When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth."). If the jury found some of Orton's statements entirely implausible, especially given his professional expertise, it could have inferred that he knew the very facts of which he was denying knowledge. The jury was also entitled to discredit Swan's statements denying Orton's knowledge, particularly in light of the fact that Swan was a close friend of Orton. Further, Swan testified at one point that he was sure he told Orton about the bribes in response to the short selling, because he told everyone else. Two stockbrokers also testified that they had discussed payoff arrangements with Orton.

Given all the evidence, direct and inferential, we cannot conclude that no rational trier of fact could have found that Orton had the requisite intent to commit the offense for which he was convicted. We therefore affirm his convictions.

B. *Guilt–Assuming Hypothetical Questions*

■ Although the prosecution's use of guilt-assuming hypothetical questions to cross-examine Orton's character witnesses constituted error, *United States v. Shwayder*, No. 01–10156 (opinion filed concurrently), these questions did not affect Orton's substantial rights and therefore do not warrant reversal under the plain error standard. The witnesses' answers were very similar to those provided by Shwayder's character witnesses, and, for similar reasons, were as likely to have aided Orton's cause as to have harmed it.

C. *Sentencing Challenges*

■ (i) *Grouping of Money Laundering Offenses:* The district court properly applied the Sentencing Guidelines' instructions for grouping Orton's convictions under 18 U.S.C. § 1956 with those under § 1957. The court followed the directions in the relevant version of the Guidelines, which instructed that offenses for money laundering, governed by U.S.S.G. § 2S1.1 and 2S1.2, be grouped under § 3D1.2(d). The Guidelines require offenses listed under § 3D1.2(d) to be grouped according to the method described in § 3D1.3(b). The district court applied this method by first aggregating the total losses associated with the § 1956 and § 1957 violations and then applying the offense guideline—in this case, § 2S1.1—resulting in the highest offense level. *United States v. Savage*, 67 F.3d 1435 (9th Cir.1995) did not adopt any contrary interpretation of the Guidelines but, in the course of declining to decide an issue raised on appeal, merely described what one district court had done under the Guidelines' grouping provisions for money laundering offenses.

■ (ii) *Manager or Supervisor Enhancement:* The district court did not clearly err by increasing Orton's base offense level three points under U.S.S.G. § 3B1.1(b) for being a manager or supervisor. We need not decide whether Orton directed another criminally responsible participant, *see* U.S.S.G. § 3B1.1, app. n. 1 & 2, because the district court's stated findings support an alternative basis for the enhancement—that Orton directed the property or assets of the organization.

*See* U.S.S.G. § 3B1.1, app. n. 2. The three-point enhancement rather than the two-point increase was appropriate here both because the organization "involved five or more participants" and because it was "otherwise extensive." U.S.S.G. § 3B1.1, app. n. 3.

■ (iii) Apprendi *Error:* Orton argues that the district judge erred under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by making factual findings to increase the base offense level under the Sentencing Guidelines. Orton also contends that the judge's application of the aggregated losses, including the losses associated with his convictions under 18 U.S.C. § 1956, to determine his sentence for convictions under 18 U.S.C. § 1957, constituted a violation of *Apprendi.* We reject these arguments because "*Apprendi* does not alter the authority of the judge to sentence *within* the statutory range provided by Congress." *United States v. Buckland,* 289 F.3d 558, 570 (9th Cir.2002) (en banc); *see also United States v. Johansson,* 249 F.3d 848, 861–62 (9th Cir.2001).

2. *Challenges to the Restitution Order*

■ A. *Acts of Third–Parties:* Orton and Swan contend that the district court impermissibly shifted the burden of proof as to the amount of restitution when it did not accept their argument that illegal short selling by third parties was an unrelated, unforeseeable act that actually caused some of the losses for which restitution was ordered. We disagree. Swan and Orton did not make a factual showing on their causation theory so strong that the district court was compelled to accept it in lieu of the government's showing on causation. The defendants did present testimony indicating that some illegal shorting activity may have taken place. But this activity was directly related to the bribery and took place mostly after the time period

that the government used to calculate losses. Moreover, Swan admitted that both legal and illegal shorting were foreseeable as a result of his illegal activities and that he reacted to the short selling by bribing more stockbrokers.

■ Swan and Orton also contend for the first time on appeal that negligent mismanagement subsequent to Swan's departure from Teletek was an unrelated, unforeseeable cause of the losses. Although the defendants rely on evidence that they presented to the district court for a separate purpose, they never asked the district court to consider this evidence to reduce the amount of the restitution order, even when the district court specifically asked if they had any more arguments regarding causation. Because this argument is very fact-dependent, there are no exceptional circumstances explaining why the issue was not raised below, and since there has been no change in law since the proceedings below, we conclude that Swan and Orton waived this argument. *See United States v. Antonakeas,* 255 F.3d 714, 721 (9th Cir.2001). In any event, we conclude that the evidence is not sufficient to compel a determination of the amount of loss different from that reached by the district court, as it relates to a very minor proportion of the restitution ordered and does not negate any inference that the downward slide in the company's fortunes would have occurred without the new management's asserted errors.

In sum, the district court did not abuse its discretion in accepting the government's proof of losses. We therefore decline to remand to the district court for an evidentiary hearing regarding the causation for the losses.

■ b. *Application of the Restitution Statute:* Orton maintains that the district court failed to apply the version of the Victim and Witness Protection Act

("VWPA") in effect at the time he committed the offenses, *see* 18 U.S.C. §§ 3663, 3664 (1995), and, as a result, did not reduce the amount of restitution to account for other amounts recovered by the victims.

The district court applied the correct version of the VWPA. Although the district court did not explicitly state that it was applying the 1995 version of the VWPA, the Pre–Sentencing Report explained that this version was the applicable statute. Nothing in the district court's application of the restitution statute indicates that it was applying a statute other than the 1995 version.

The district court's judgment ordered that Orton "receive credit for all payments previously made toward any criminal monetary penalties imposed." The district court also instructed that the defendants be jointly and severally liable for the restitution payments. These instructions assured that there would be no duplication of payments. *See United States v. Johnston*, 199 F.3d 1015, 1023 (9th Cir.1999).

The district court did not abuse its discretion in failing to use the proceeds collected from a civil settlement to reduce the amount of restitution for which Orton is responsible. The version of the VWPA in effect in 1995 directs that restitution amounts be set off against any amounts later recovered in a civil proceeding but does not require that the defendant's restitution be reduced by the amount of civil damages recovered. *See* 18 U.S.C. § 3663(e)(2)(A) (1995); *see also United States v. Savoie*, 985 F.2d 612, 619 (1st Cir.1993); *United States v. Cloud*, 872 F.2d 846, 854 (9th Cir.1989).

For the reasons stated above, we AFFIRM Orton's convictions and sentence

* This panel unanimously finds this case suitable for decision without oral argument. *See*

and the district court's restitution orders as to Orton and Swan.

AFFIRMED.