Theresa J. HEDGE, Plaintiff–Appellant,

v.

COUNTY OF TIPPECANOE, et al., Defendants–Appellees.

No. 88–2630.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1989.

Decided Nov. 17, 1989.

Edward Chosnek, Pearlman & Chosnek, Lafayette, Ind., for plaintiff-appellant.

James A. Gothard, Lawrence B. O'Connell, Gothard, Poelstra & O'Connell, Lafayette, Ind., William W. Kurnik, Kurnik, Cipolla, Stephenson, Barasha & O'Dell, Arlington Heights, Ill., for defendants-appellees.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Theresa Hedge appeals from an entry of summary judgment in favor of the defendants, County of Tippecanoe, former Tippecanoe County Sheriff, Edgar B. Harger and Kevin Gibson, in an action for damages Hedge brought under 42 U.S.C. § 1983. Hedge alleged that questions defendants asked of her during a pre-employment polygraph examination violated her right to privacy under the United States Constitution. We affirm in part, reverse in part, and remand in part.

I

In February 1986, while employed as a jail officer for the Tippecanoe County Police Department, Theresa Hedge applied for the position of police officer. As part of the hiring procedure for new police officers, Tippecanoe County's former Sheriff, Edgar Harger and other departmental officials established a requirement that applicants submit to a polygraph examination. The County was interested in probing the areas of truthfulness, theft, drugs and homosexuality.

Hedge underwent a pre-employment polygraph examination on March 11, 1986,[1] administered by Kevin Gibson, an employee of the Lafayette, Indiana Police Department.[2] As part of a preliminary examination given before the polygraph was used, Hedge was asked a variety of questions including whether she had smoked marijuana, whether she had been a crime victim, whether she had been arrested for or convicted of a crime and whether she drank alcohol. During this portion of the examination Gibson also asked Hedge whether she ever had a homosexual experience, engaged in abnormal sex or carried on an affair with a married man. Gibson then asked Hedge for the names of the men with whom she had been sexually involved. Hedge stated that she did not want to identify them. Gibson replied that he

---

1. Prior to submitting to the examination, Hedge signed a consent form that released the "Tippecanoe County Sheriff, their agents and employees, and the City of Lafayette, Indiana, Police Department, their agents and employees, from any liability flowing either from the operation of the devices of the polygraph, or the use of the results obtained therefrom." Signing this release was a prerequisite to the polygraph examination, and the examination, in turn, was a condition precedent to hiring as a Tippecanoe County police officer.

2. The County contracted with Gibson to perform the examination on its behalf. The extent of guidance the County gave Gibson concerning areas of possible questioning in this case is somewhat unclear. Apparently Sheriff Harger did not give specific instructions to Gibson concerning the scope of the questions to be posed. Gibson stated that one of Harger's subordinates, Major Robert Brown, told him to conduct the examination in the same way as Tippecanoe County Sheriff Sergeant Pope had conducted such examinations in the past.

would not and could not use the information concerning the identity of Hedge's sexual partners against Hedge or those with whom she had been intimate. A period of silence followed after which Hedge divulged the names of the men with whom she had been involved.

Immediately after the polygraph examination, Hedge complained to Captains Chase and Worthington concerning the sexually oriented questions Gibson had posed. Later that same day she complained about these questions to Sergeant Cordell. Cordell told her that he had a feeling that this might happen as a result of rumors that Hedge was having an affair with Captain Chase and had been smoking marijuana.

Gibson prepared a report on the polygraph examination on March 11, 1986, shortly after he had administered the examination. The report noted that Hedge had smoked marijuana on two occasions. The report also stated that Hedge admitted having had relationships with at least three married men. In addition the report observed that Hedge "exhibited significant reactions indicative of deception" to questions involving telling the truth during the interview, thefts not related to work, abnormal sexual practices and attempts to withhold information from the examiner. The report concluded that "it is the opinion of the examiner that the subject did not tell the complete truth during the examination."

In a letter dated March 19, 1986, Sheriff Harger, while notifying Hedge that she would not be offered the police officer position, failed to set forth a specific reason for denying her employment.[3] In response, Hedge instituted legal action alleging that her rights under the First and Fourteenth Amendment to the United States Constitution were violated as a result of the polygraph examiner's questions relating to her sexual habits, associations and identity of her sexual partners. Following an unsuc-

cessful motion to dismiss, Defendant Gibson's counsel moved for summary judgment on the basis of qualified immunity, asserting that the constitutional rights Hedge alleged were not clearly established at the time of Hedge's March 11, 1986, polygraph examination. Hearing on Gibson's motion was held on June 28, 1988, following which the district court instructed the parties to file memoranda on the issue of qualified immunity on or before July 18, 1988. On this date Hedge filed her memorandum opposing summary judgment, and the defendants County of Tippecanoe and Edgar B. Harger moved for summary judgment on the basis of qualified immunity for the first time. Slightly more than a week later, on July 26, 1988, the district court granted summary judgment to all three defendants on the basis of qualified immunity.

## II

■ Initially we turn to the district court's determination that defendants Kevin Gibson and Edgar Harger were entitled to summary judgment in their individual capacities on the basis of qualified immunity. We have recently observed that:

"Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard requires that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, while the very act in question need not have been held unlawful,

---

**3.** During Sheriff Harger's deposition in this case, the Sheriff stated that Hedge was denied the position because the examiner reported she was untruthful during the polygraph examination and further that she had admitted to at least two criminal acts while an employee of the

Tippecanoe County Sheriff's Department. The decision not to employ was made following a conference between Harger, Major Brown, Captain Worthington and Captain Chase of the Sheriff's Department.

the unlawfulness of the official's conduct must have been apparent in light of preexisting law. *Id.*"

*Doe v. Bobbitt,* 881 F.2d 510, 511 (7th Cir. 1989). "[A] qualified immunity analysis entails a purely objective inquiry to determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz v. Parrott,* 883 F.2d 551 (7th Cir.1989). This "objective analysis is less fact bound than a subjective analysis, making summary judgment a practical and effective means of terminating unnecessary litigation. The necessity of protecting government officials from the cost of trial and burdens of discovery, whenever possible, supports the increased use of summary judgment." *Rakovich v. Wade,* 850 F.2d 1180, 1205 (7th Cir.1988) (en banc).

"Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law show that the now specifically defined actions violated the clearly established law."

*Rakovich,* 850 F.2d at 1209. Thus, the issue in this case is whether the constitutional right to be free from sexually related questions in pre-employment interviews Hedge asserts was clearly established at the time of her March 11, 1986, polygraph examination.

A survey of the precedent at that time reveals an absence of decisive Supreme Court or Seventh Circuit case law.

"The presence of a controlling precedent is not, however, a *sine qua non* of a finding that a particular right has been clearly established within the meaning of *Harlow.* In the absence of a controlling precedent we look to all relevant case law in an effort to determine whether at the time of the alleged acts a sufficient consensus had been reached indicating that the official's conduct was unlawful. To state the proposition in another way, we seek to determine whether there was

such a clear trend in the case law that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time. This approach makes eminent sense for it precludes an individual from escaping liability for unlawful conduct due to the fortuity that a court in a particular jurisdiction had not yet had the opportunity to address the issue."

*Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir.1989) (citation omitted).

In March 1986 the Supreme Court had recognized a "confidentiality" strand of the constitutional right to privacy protecting "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). But, the extent to which that interest protected candidates for employment in law enforcement capacities from questions regarding sexual matters was less settled. We know of only one Circuit that has dealt with this question, the Ninth Circuit, and it has determined that questions of this nature violated the individual's right to privacy. *Thorne v. City of El Segundo,* 726 F.2d 459, 468–72 (9th Cir.1983). That case involved a candidate for a police officer position who had been questioned in a polygraph examination regarding her sexual involvement with a married man. Also at the time of Hedge's March 11, 1986, examination, the Supreme Court had set oral argument in the case of *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), that was to consider the question of the extent to which the state could constitutionally criminalize certain consensual sexual activity. In this situation we do not believe that as of March 1986 "there was such a clear trend in the case law that we can say with fair assurance that the recognition of the right [to be free from pre-employment questions regarding sexual activities] was merely a question of time." *Cleveland–Perdue,* 881 F.2d at 431. *See Bobbitt,* 881 F.2d at 511–12 (one circuit court case not directly on point insufficient to clearly establish constitutional right); *Lojuk v. Johnson,* 770 F.2d 619, 631 (7th Cir.1985), *cert. denied,* 474 U.S. 1067, 106

S.Ct. 822, 88 L.Ed.2d 795 (1986) (one circuit court case, one district court case and several other distantly related cases insufficient to clearly establish constitutional right); *Davis v. Holly*, 835 F.2d 1175, 1182 (6th Cir.1987) (decision from one circuit insufficient to clearly establish constitutional right). In light of the absence of a clear trend in the case law as of that date toward recognition of a constitutional right to be free from sexually oriented questions during pre-employment polygraph examinations administered in the public sector, the defendants, Kevin Gibson and Edgar Harger, were entitled to qualified immunity from suit in their individual capacities as the district court judge ruled.

### III

■ The remaining question is whether summary judgment was properly entered in favor of the defendant County of Tippecanoe. In resolving this question the trial court relied upon the doctrine of qualified immunity. We disagree with the court's ruling because the Supreme Court had authoritatively determined prior to that date that governmental bodies do not enjoy qualified immunity from damages actions under 42 U.S.C. § 1983. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

■ The County argues that Hedge has waived the right to rely upon *Owen* because she failed to bring this case to the attention of the trial judge. We disagree, for it is well settled that the waiver rule does not prevent a party from attacking on appeal the legal theory upon which the district court based its decision. *See United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir.1989) ("It is folly for Earth to assert that an appeals court on review of a district court judgment cannot consider the merits of each and every theory the district judge relied upon in deciding the case"); *Toney v. Burris*, 829 F.2d 622, 626 (7th Cir.1987) (waiver rule does not apply to the law on which a decision is

based). We would also note that the County, as well as Hedge, had the ethical responsibility to inform the district court of Supreme Court case law that directly controls the qualified immunity defense issue. At best it was incompetent and at worst deceptive for the County to attempt to rely upon a defense that is directly precluded under the controlling case law and is unaccompanied by a good faith argument for the reversal of this case law. Governmental attorneys, including County attorneys, have an absolute duty under the rules of professional responsibility to bring directly controlling legal precedent to the attention of the court before whom they litigate. The County compounded this problem in waiting until the eleventh hour to file its motion for summary judgment. Because a request for leave to file this motion was not filed until the date the district court had established for the simultaneous filing of post-hearing briefs on Kevin Gibson's motion for summary judgment, Hedge was unable to reply to the County's motion. The County filed this motion only eight days prior to the district court's decision granting summary judgment. Accordingly, Hedge did not waive the right to rely upon *Owen*, because the waiver rule does not forbid a party from attacking the law upon which the district court relied[4] and because the County, as well as Hedge, had a duty to make the district court aware of the Supreme Court's decision in *Owen*. In accordance with the Supreme Court's decision in *Owen* that prohibits a governmental body, as a matter of law, from asserting the defense of qualified immunity, we hold that the County was not entitled to utilize the defense of qualified immunity.

Because *Owen* precludes entry of summary judgment in favor of the County on the basis of qualified immunity, we remand Hedge's action against the County to the district court. At that level the parties may elect to pursue further summary judgment proceedings under theories other than qualified immunity or may choose to pro-

---

**4.** *See United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir.1989) ("It is folly for Earth to assert that an appeals court on review of a district court judgment cannot consider the merits of each and every theory the district judge relied upon in deciding the case").

ceed to trial. Additionally, Hedge might elect to amend her action to include any possible state law theory of recovery. Accordingly, the district court's entry of summary judgment in favor of Edward Harger and Kevin Gibson in their individual capacities is affirmed, and the summary judgment entered in favor of the County, as well as Gibson and Harger in their official capacities, is reversed.[5] The case is remanded with directions to the district court to proceed in the matter consistent with the directions and rulings of this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

**5.** The reason why our reversal and remand of summary judgment in favor of the County applies to Gibson and Harger in their official capacities is that "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).