USCA1 Opinion

 

 March 2, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1963 UNITED STATES, Appellee, v. THOMAS E. NEWMAN, Defendant, Appellant. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on February 28, 1995, is amended as follows: Page 1: change "Ronald R. Lagueux, U.S. District Judge" to ____________________ "Francis J. Boyle, Senior U.S. District Judge". __________________________ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1963 UNITED STATES, Appellee, v. THOMAS E. NEWMAN, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ John A. Macfadyen for appellant. _________________ Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Sheldon Whitehouse, United States Attorney, and Edwin J. Gale, ___________________ _______________ Assistant United States Attorney, were on brief for appellee. ____________________ February 28, 1995 ____________________ 2 CAMPBELL, Senior Circuit Judge. Defendant Thomas _____________________ Newman appeals from final judgment and sentence entered by the district court after a three-week criminal trial. The jury convicted Newman of five counts of wire fraud (18 U.S.C. 1343 (1988)) and four counts of transporting stolen property in interstate commerce (18 U.S.C. 2314 (1988)), all arising out of his allegedly fraudulent acquisition of an insurance company and the diversion of almost $400,000 of its funds for his personal use. Newman alleges that the district court committed a variety of errors at trial and at sentencing. We affirm the judgment, and most, but not all, aspects of the sentence. I. I. In late 1989, Newman, a self-described businessman, met with the owner and officers of Rumford Property and Liability Insurance Company ("RPLIC") to discuss his possible purchase of the Rhode Island-based insurance company. After a series of discussions and negotiations, Newman purchased RPLIC for $200,000 on December 11, 1989. RPLIC's stock was immediately transferred to the newly-created Rumford Holding Company ("RHC"), which was wholly owned by Newman. Prior to the purchase, RPLIC had been facing financial difficulties. In part because of these difficulties, RPLIC had been under investigation by Rhode Island's Department of Business Regulation ("DBR") and had -3- 3 entered into several consent orders concerning its operations. The most recent of these orders, dated May 1989, was still in effect at the time of purchase and restricted, inter alia, certain uses of RPLIC's assets without DBR ___________ approval. At the time of purchase, these assets consisted of approximately $1.2 million in cash, $1 million in common stock, $200,000 in bonds, and various other assets. RPLIC's liabilities exceeded its assets. Under Rhode Island law, a sale of an insurance company is subject to approval by the DBR. R.I. Gen. Laws 27-35-2. When first notified of the possibility that RPLIC might be sold, the DBR indicated that it would not approve the sale unless the purchaser added $2.5 to $5 million in capital. At the time of the purchase, Newman was aware of these facts. During the course of the negotiations, various drafts of the purchase agreement were circulated, all of which referred to the consent order and the need to obtain approval from the DBR. Newman had also been given a letter documenting RPLIC's financial condition and indicating that its liabilities exceeded its assets. The final agreement required Newman to seek DBR approval of the sale immediately. Furthermore, at the closing on December 11, Newman read the most recent consent order, dated May 1989. Although Newman first expressed surprise and concern over the content of the consent order, he was assured that it would not bar the -4- 4 normal operation of the business, although it would bar any extraordinary transfers of funds. After a lengthy discussion Newman went ahead and purchased RPLIC, as noted above, for $200,000 ($100,000 in cash, which he had borrowed, and $100,000 in a promissory note).1 The next day, December 12, Newman met with a number of RPLIC officers and announced that he needed to make disbursements of approximately $400,000 from RPLIC's accounts. Over their objections, Newman directed them to transfer from RPLIC's accounts (and the accounts of RPLIC's subsidiaries) the following funds: a $120,000 check from a RPLIC subsidiary's checking account; $79,100 from various money market accounts; and $184,3002 from a number of brokerage accounts. The check was given to Newman personally, and the other funds were transferred to a checking account in the name of Rumford Holdings, for which Newman was the sole signatory. Altogether, $380,400 was removed from RPLIC's accounts. Newman subsequently used the $120,000 check to pay back the loan that he had taken out for the cash he had needed at the closing. From the Rumford Holdings checking  ____________________ 1. Under Rhode Island law, the signing of a purchase agreement without prior DBR approval is permitted. However, final legal control over the company does not change hands until the purchase has been approved. 2. This sum consisted of four separate transfers, which formed the basis of counts I through IV (wire fraud). -5- 5 account, Newman made the following disbursements: $150,000 to the brokerage firm that had helped him acquire RPLIC; $21,0003 in a check payable to himself; $7,000 in cash to himself; $15,0004 in three checks, one to himself and two to his wife; and $50,0005 in a wire transfer to an account in his name and that of his wife at the First Virginia Bank. The funds from this last transfer were used to pay his personal bills, including mortgage payments on a house. Included in the above were the disbursements and transfers that formed the basis for the five counts of wire fraud and four counts of interstate transport of stolen property set forth in the indictment. Newman subsequently made additional transfers of funds from RPLIC,6 although these transfers were not a part of the indictment. Although the purchase agreement required Newman to seek DBR approval of the sale immediately, he did not notify the DBR of the sale until  ____________________ 3. This sum formed the basis of count VI (interstate transport). 4. These three checks formed the basis of counts VII through IX (interstate transport). 5. This sum formed the basis of count V (wire fraud). 6. In January of 1990, Newman leased office space in Washington D.C., for which Rumford Holdings paid the rent. In February, Newman appointed himself the president, chief executive officer, and chairman of the board of Rumford Holdings, and began to draw an annual salary of $100,000. Between February and July, Newman charged approximately $50,000 in personal expenses on the Rumford Holdings credit card. -6- 6 March of 1990. In April, the DBR sent a letter to Newman demanding that he formally seek approval from the DBR by filing a "Form A" by mid-April. Then in May, the DBR learned that Newman had diverted nearly $490,000 of RPLIC's funds. The DBR wrote Newman, notifying him that he had no authority to divert the funds and demanding that he return the funds to RPLIC immediately. After receiving no response from Newman, the DBR in June of 1990 petitioned for an order placing RPLIC in receivership. Newman was indicted in February of 1991. The government argued that Newman had acquired the company with no intent of revitalizing it, but with the sole intent to divert its assets for his own personal use. The government contended that Newman knew that RPLIC was in financial trouble and that the consent order precluded transfer of RPLIC's assets, yet removed those assets without making any attempt to provide the company with the needed capital infusion. Newman's defense at trial was that he was an innocent victim who had been deceived by the other participants involved in the purchase of RPLIC, namely, the former owner, various RPLIC executives, and the broker of the purchase. Newman claimed that he was unaware of RPLIC's dire financial position and that his counsel had advised him that the consent order did not apply to him. Newman further -7- 7 claimed that, after the purchase of RPLIC, he had tried desperately to find investors to provide the necessary capital, and that the transferred funds were simply loans that he intended to repay. Newman also argued that he failed to seek DBR approval because he believed he had more time under the contract before he was required to do so. The jury convicted Newman of all nine counts. In September of 1991, the district judge sentenced Newman to concurrent terms of 71 months for the four counts of interstate transport of stolen property and 60 months for the five counts of wire fraud. The judge also imposed concurrent three-year terms of supervised release on the condition that Newman pay $489,779 in restitution and the costs of his supervised release.7 II. II. Newman argues that the district court made errors at the trial and at sentencing. These errors can be grouped into four categories: (1) the district court excluded  ____________________ 7. The government in its brief acknowledges that, although Newman has not raised this point, the district court appears to have erred in imposing the costs of supervised release. Such costs constitute an additional fine that can only be imposed in conjunction with a punitive fine. See United ___ ______ States v. Brandon, 17 F.3d 409, 461 (1st Cir.), cert. denied, ______ _______ ____________ 115 S. Ct. 80 (1994). Because the district court did not impose a fine, the government asks this court to vacate that part of the judgment. United States v. Pineda, 981 F.2d 569, _____________ ______ 576 (1st Cir. 1992). As requested, we accordingly vacate the part of the sentence imposing the costs of supervised release. -8- 8 evidence that should have been allowed; (2) the district court allowed evidence that should have been excluded; (3) the district court permitted the prosecutor to question Newman unfairly; and (4) the district court erroneously applied the sentencing guidelines. Only in the last category do we find any claim of merit. A. Improperly Excluded Evidence  ____________________________ Newman argues that the district court abused its discretion in refusing to admit into evidence a series of letters exchanged in May of 1990 between Newman and Daniel K. Jackson & Associates, an investment firm. The correspondence included a form filled out by Newman containing basic information about RPLIC and requesting investment capital. The correspondence also included a response from the company indicating it was interested in perhaps arranging financing. According to Newman, the correspondence was clearly relevant in that it corroborated his testimony at trial that he was in fact actively seeking capital investment for the continuing operation of RPLIC. It would supposedly have rebutted the government's contention that Newman had bought the company with the sole intent of diverting its assets. We agree with the government that the district court did not abuse its discretion in excluding the evidence as irrelevant. The correspondence was exchanged in May of 1990, four months after Newman had purchased RPLIC and -9- 9 diverted its assets. Given the timing of the correspondence, the district court could reasonably have found that it said nothing about the relevant issue: Newman's state of mind at the time of the purchase and diversion of assets. The correspondence, moreover, was cumulative. Even assuming arguendo its relevance, its exclusion was unprejudicial, since Newman had already testified that he sought investment financing from Daniel K. Jackson & Associates as well as a number of other investment companies, and the government never disputed this assertion. Newman next argues that the district court abused its discretion when it excluded certain proffered testimony by the director of the DBR. This testimony concerned the circumstances that led up to the consent orders entered into with RPLIC prior to Newman's purchase of the company. The district court concluded that this testimony was not relevant to whether Newman had known of the consent orders. Newman argues, however, that the testimony would have indicated that the consent orders had been entered into prior to his involvement with RPLIC and were directed primarily at RPLIC's former owner. This, Newman suggests, would have bolstered his claim that his lawyers had advised him that the consent orders did not apply to him, thereby countering the government's argument that Newman's flagrant violation of the consent orders was evidence of his intent to defraud. -10- 10 Again, we think that this evidentiary ruling did not constitute an abuse of discretion. The district court could reasonably have concluded that the specific events that led up to the consent orders were not relevant to whether Newman was aware of the restrictions imposed by the decrees at the time he purchased RPLIC. The testimony sought by Newman concerned the events that led up to the consent order; it did not suggest that Newman was unaware of the order or the limits it imposed on the transfer of RPLIC's assets. Indeed, the consent order clearly stated on its face the restrictions imposed upon RPLIC, and it is undisputed that Newman had read the order prior to his purchase of the company. Newman, moreover, could not have been prejudiced by exclusion of this testimony since there was already considerable testimony from other witnesses concerning the history of the consent orders. Finally, Newman argues that the district court abused its discretion when it excluded a DBR report from a 1987 investigation of RPLIC. The report indicated that RPLIC was in financial trouble and that RPLIC's records were in such disarray that it was difficult to determine whether RPLIC was solvent. Newman contends that an RPLIC executive first received a copy of this report in January of 1990, but failed to show it to Newman (who by then had purchased the company). Newman argues that the report is therefore -11- 11 relevant in that the failure to show it to him supports his claim that the same executives withheld information about the financial status of RPLIC from him before his decision to ______ purchase RPLIC. The district court did not abuse its discretion in excluding the report as irrelevant. The report was received by RPLIC after Newman had already purchased the company and thus says nothing about what information might have been withheld from him before the purchase. The report, moreover, was cumulative of other evidence and its exclusion could not have prejudiced Newman. The record shows that Newman had repeatedly been informed of RPLIC's precarious financial state prior to his purchase of the company. In particular, the $200,000 purchase price and the letter stating that RPLIC's liabilities exceeded its assets would have told Newman of RPLIC's situation. B. Improperly Included Evidence ____________________________ Newman argues that the district court erred in allowing testimony by the government's witnesses to the effect that Newman's actions violated the law. Specifically, Newman points to the following three pieces of evidence: 1. a letter from the DBR director to Newman dated May 16, 1990, stating: "It has come to our attention . . . that certain funds have been diverted from these Companies in violation of the laws of the State of Rhode Island . . . . The transactions referred to are grave violations of the insurance laws of the -12- 12 State of Rhode Island and subject both the Companies and the individuals involved to criminal penalties." 2. DBR legal counsel's testimony that she told the broker of the sale of the company "that I believed that he should return [the broker's fee], because it had been illegally appropriated." 3. RPLIC counsel's testimony that he told RPLIC's comptroller that Newman should return "the monies which had been wrongfully taken immediately." Newman argues that these statements amounted to legal opinions about Newman's guilt, and were hence inadmissible and extremely prejudicial in that they effectively told the jury what result to reach. See, e.g., Hygh v. Jacobs, 961 ___ ____ ____ ______ F.2d 359, 363 (2d Cir. 1992); Torres v. County of Oakland, ______ _________________ 758 F.2d 147, 150 (6th Cir. 1985); see also Marx & Co. v. ___ ____ ___________ Diners' Club, Inc., 550 F.2d 505, 512 (2d Cir.) ("It is not __________________ for witnesses to instruct the jury as to applicable principles of law, but for the judge."), cert. denied, 434 _____________ U.S. 861 (1977). We agree that opinions as to the ultimate legal issue of guilt or innocence are generally not admissible. See, e.g., United States v. Espino, 32 F.3d 253, 257 (7th ___ ____ ______________ ______ Cir. 1994); Hogan v. American Telephone & Telegraph Co., 812 _____ ___________________________________ F.2d 409, 411-12 (8th Cir. 1987); Fed. R. Evid. 704 advisory -13- 13 committee's notes.8 However, Newman failed to object to the first two statements, and, absent any objections, the district court had little reason to exclude the statements on its own accord. The above statements were not offered as opinion testimony per se; rather, the DBR director's opinion was part of a letter demanding that Newman return the diverted assets, and the second statement was offered in the ordinary course of describing certain events and discussions surrounding the discovery of Newman's diversion of funds. Without objection to the specific items, the district court could well have concluded that the evidence, overall, was helpful to the jury in understanding the course of events. Admission of the first two statements clearly did not rise to the level of plain error. See United States v. Williams, 809 ___ _____________ ________ F.2d 75, 82 (1st Cir. 1986), cert. denied, 482 U.S. 906 _____________ (1987). Newman did object to the third statement, and while its admission was erroneous, the error was harmless. The  ____________________ 8. Although Newman couches his argument in terms of improper expert opinion (which he apparently argues is ______ inadmissible under Fed. R. Evid. 702), we construe his argument as objecting to improper lay opinion (subject to ___ Fed. R. Evid. 701), since the above statements were not offered as expert testimony. This does not significantly alter Newman's argument, however, as ultimate legal opinion may be equally inadmissible under both Fed. R. Evid. 701 and 702. See Fed. R. Evid. 704 advisory committee's notes ___ ("Rules 701 and 702 . . . afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . ."). -14- 14 general concern with statements of ultimate legal opinions is that juries may be confused or may accept the offered opinions in lieu of the legal rulings of the judge. See 3 ___ Jack Weinstein & Margaret Berger, Weinstein's Evidence  ____________________ 704[02] (1994). The third statement did not present this risk. Like the second statement, it was made in the course of describing events and discussions surrounding Newman's diversion of the funds. The statement was made in passing and was not held out as authoritative or expert opinion on Newman's guilt for the charges on trial. See, e.g., Hygh, ___ ____ ____ 961 F.2d 363 (finding that erroneous admission of legal opinion was harmless error). C. Prosecutorial Misconduct ________________________ Newman argues that the district court erred in allowing the government to ask him grossly improper and argumentative questions during the opening of the cross- examination. Newman points to two specific sets of questions. In the first, the prosecutor asked Newman if he knew the meaning of the terms "intent" or "state of mind." We find these questions to be clearly harmless. Indeed, Newman does not indicate that this line of questioning unfairly prejudiced him in any way. The second set of questions is more troublesome: PROSECUTOR: Do you know what a con man is, sir? NEWMAN: What a what, I'm sorry? P: A con man, C-O-N? -15- 15 N: I've seen it on television. P: Is that the only place? N: Yes. P: Con man stands for confidence man, is that correct? N: I don't know that. P: You don't know that? N: No. P: Con game stands for confidence game, doesn't it? N: If you say so, I don't know that. P: You don't know that? N: No. P: Are you telling this jury you don't know what a con man is? N: I said I saw it on television, I didn't really know what the word meant in the sense of what it wasan abbreviation for. P: And you don't know what confidence game is? N: I've heard of confidence games, yes. P: But you don't know what they are? N: Well, purely from the superficial point of view. P: Well, superficially a confidence game is a game, is it not, conducted by a con man where through certain representations or through an absence of providing certain information, the victims of the con game will do something or refrain from doing something that they would otherwise do without those misrepresentations, correct? N: Are you asking me if that's the definition of a con man? -16- 16 P: Is that an accurate definition? N: I don't know. P: You were blessed with a good education, is that correct, sir? N: I was blessed with an education, yes, God allowed me to get an education, a good education. Newman argues that these questions had nothing to do with his guilt or innocence, but were designed solely to discredit him by insinuation. Newman argues that this constituted prosecutorial misconduct and that the district court erred in allowing it to occur. Newman urges us to use our supervisory powers to reverse his conviction in order to deter future such misconduct. See United States v. Capone, 683 F.2d 582, ___ _____________ ______ 585-86 (1st Cir. 1982). We agree with Newman that the prosecutor's questions were extremely inappropriate. There seems to have been no justifiable purpose for that line of questioning, other than, as Newman suggests, to discredit him by insinuation. Not directed at ascertaining any relevant fact, the questions should not have been allowed. Newman did not, however, object to the questioning. Our review is therefore limited to determining if the judge's failure to cut off the questioning sua sponte amounted to __________ plain error. See United States v. Smith, 982 F.2d 681, 682 ___ _____________ _____ (1st Cir. 1993). We conclude that they did not. See United ___ ______ States v. Sgro, 816 F.2d 30, 34 (1st Cir. 1987), cert. denied ______ ____ ____________ -17- 17 484 U.S. 1063 (1988). The questioning was only a small part of the lengthy cross-examination; it was isolated and not characteristic of other questioning by the prosecutor. The judge, on several occasions during the trial, advised the jury that questions asked by the attorneys were not evidence. The evidence of Newman's guilt was extensive. In all the circumstances, the prosecutor's improper questions did not "so poison[] the well" that the verdict was affected and a new trial is required. See Smith, 982 F.2d at 682; Sgro, 816 ___ _____ ____ F.2d at 34. D. Sentencing Guidelines Errors ____________________________ Newman argues that the district court wrongly applied the sentencing guidelines. Specifically, the district court allegedly erred: (1) in enhancing the sentence for "abuse of a private trust"; (2) in enhancing the sentence for violation of a consent order; and (3) in imposing restitution in the amount of $489,779. 1. Abuse of Private Trust ______________________ Newman argues that the district court erred in enhancing his sentence under U.S.S.G. 3B1.3 for abuse of a position of private trust.9 The district court found that  ____________________ 9. U.S.S.G. 3B1.3 provides in relevant part: If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels. -18- 18 the insurance industry is heavily regulated and that persons in control of insurance companies occupy a position of trust which obligates them to act in the interests of their policyholders and employees. The district court found that, by diverting RPLIC's funds for his own use, Newman abused this position of trust. Newman argues, however, that the enhancement does not apply since he never legally occupied a "position of trust." Newman argues that he technically never obtained legal control of RPLIC, having failed to obtain approval of the purchase from the DBR as required under Rhode Island law. At most, Newman argues, the evidence suggests that he committed an ordinary fraud. Never having occupied the position legally, Newman argues, he cannot be subject to the enhancement.10 While Newman may never have legally occupied the position, he indisputably had de facto control over the _________ company and thus in fact occupied a position of trust. The application note to the sentencing guidelines in effect at the time of sentencing provides that: "[t]he position of trust must have contributed in some substantial way to  ____________________ 10. The government argues that, although Newman objected to this enhancement at sentencing, he did not object on this precise ground and this argument is therefore not properly preserved on appeal. See United States v. Ortiz, 966 F.2d ___ _____________ _____ 707, 717 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 _____________ (1993). Since it is not entirely clear to us that Newman failed to object on this ground, we choose instead to dispose of the claim on its merits. -19- 19 facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." U.S.S.G. 3B1.3 comment. (n.1) (1991). Newman's position and his effective discretionary control over the company enabled him to transfer the funds for his own use. This is exactly the type of behavior that the enhancement was aimed at. It would be perverse to allow the lack of formal, legal control, for which Newman was responsible by failing to file the appropriate forms, to insulate him from the consequences of his breach of trust. Cf. United States v. ___ _____________ Innamorati, 996 F.2d 456, 489-90 (1st Cir.), (former state __________ registry police officer subject to enhancement where prior position of trust facilitated his crime), cert. denied, 114 ____________ S. Ct. 409 (1993). Newman also argues that the enhancement cannot apply to him since his acquisition of the position of trust was itself a part of the crime. Drawing an analogy to cases dealing with enhancements under 3B1.3 for abuse of "special skills", see United States v. Young, 932 F.2d 1510, 1513-14 ___ _____________ _____ (D.C. Cir. 1991), he argues that the enhancement applies only to the abuse of a preexisting position of trust, and ___________ therefore cannot apply to him. However, even assuming arguendo that this theory has validity, Newman misconstrues the crimes of which he was convicted. He was not convicted of the fraudulent acquisition of an insurance company. -20- 20 Rather, he was convicted of wire fraud and interstate transport of stolen property, crimes which were substantially facilitated by his prior acquisition of control over the insurance company. His abuse of the position was precisely the behavior targeted by the enhancement. We find no error in the application of this sentence enhancement. 2. Violation of Consent Order __________________________ Newman further argues that the district court erred in imposing a two-level increase under U.S.S.G. 2F1.1(b)(3)(B) for a knowing violation of the consent order.11 Newman argues that the enhancement applies only when a defendant violates an order directed at the defendant personally or at an entity that is controlled by the defendant. Newman argues that the order was not directed at him personally nor was he a party to the order, as it was entered into prior to his purchase of the company. Newman further argues, as above, that he never legally controlled RPLIC, since the DBR never approved the sale. Accordingly, Newman argues, the enhancement could not apply to him. We find no error in the district court's application of this enhancement. The commentary to the  ____________________ 11. U.S.S.G. 2F1.1(b)(3)(B) provides in relevant part: If the offense involved . . . violation of any judicial or administrative order, injunction, decree or process, increase by two levels. -21- 21 guidelines provides: "If it is established that an entity the defendant controlled was a party to the prior proceeding, and the defendant had knowledge of the prior decree or order, this provision applies even if the defendant was not a specifically-named party in that prior case." U.S.S.G. 2F1.1, comment. (n.5) (1991). Even though not a party to the order, Newman was subject to the enhancement if he controlled the company and knew of the prior order. As already said, Newman had de facto control of the company. Moreover, he was ________ aware of the consent order and could be found to have acted in deliberate contravention of it. Newman's violation of the order was thus subject to enhancement under 2F1.1.(b)(3)(B).12 3. Restitution ___________ Newman argues that the district court erred in ordering, as a condition of his supervised release, restitution in the amount of $489,179 under the Victim and Witness Protection Act, 18 U.S.C. 3663-3664 (1988). Newman first argues that the court erred when it failed to consider Newman's inability to pay restitution. In fashioning a restitution order, a court must consider "the amount of the  ____________________ 12. Newman additionally argues that the enhancement does not apply since it requires that the defendant have controlled the entity at the time the order was entered into. The __________________________________________ guideline, however, contains no such requirement of contemporaneousness, and Newman cites no cases imposing such a requirement. -22- 22 loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. 3664(a) (1988). Newman argues that nothing in the district court opinion indicates that the court considered Newman's financial resources. Newman points to his presentence report which indicates that he is currently indigent, has a negative net worth, and "has little current ability to pay a fine."13 Newman further argues that he has no reasonable prospect of paying the restitution in the future. Accordingly, he argues, the district court's imposition of restitution despite evidence of his inability to pay evinced a lack of adequate consideration of the statutory factors and constituted abuse of discretion. See ___ United States v. McIlvain, 967 F.2d 1479, 1481 (10th Cir. _____________ ________ 1992); United States v. Ramilo, 986 F.2d 333, 336 (9th Cir. _____________ ______ 1993).  ____________________ 13. The presentence investigation report detailed Newman's employment history and then stated: that Newman's only asset is $50,000 in equity in his former residence; that Newman has $68,000 in outstanding liabilities; that Newman has no current income; and that Newman's monthly expenses are currently $1,476. The report concluded: "Based upon the defendant's financial profile, it would appear that he has little current ability to pay a fine; however, once his legal matters are resolved, he would be in a position to secure gainful employment." -23- 23 Although the district court did not explicitly consider Newman's ability to pay the restitution, the court was not required to make specific findings of fact. See ___ United States v. Savoie, 985 F.2d 612, 618 (1st Cir. 1992). _____________ ______ Rather, it is sufficient if "the record on appeal reveals that the judge made implicit findings or otherwise adequately evinced his consideration of those factors." Id. Here, the ___ record is sufficient to indicate that the district court considered the requisite factors in arriving at the restitution amount. The district court considered and explicitly adopted the findings in the presentence report, which included information about Newman's financial condition, earning ability, and ability to pay. Although we agree that the evidence in the presentence report may not be able to support a finding that Newman has the ability to pay restitution in that amount, the statute does not require such a finding; it requires only that the district court consider ________ the defendant's financial resource as a factor in arriving at the figure. See United States v. Lombardi, 5 F.3d 568, 573 ___ _____________ ________ (1st Cir. 1993). Newman's possible future ability to pay may also be sufficient to support a restitution order. See ___ United States v. Brandon, 17 F.3d 409, 461 (1st Cir.) ______________ _______ (imposing $500,000 restitution order, even though defendant had no current ability to pay, based on defendant's future prospects of employment), cert. denied, 115 S. Ct. 80 (1994); ____________ -24- 24 Lombardi, 5 F.3d at 573. Here, the presentence report stated ________ that "once [Newman's] legal matters are resolved, he would be in a position to secure gainful employment." Thus, we cannot say that it was an abuse of discretion for the district court to impose restitution. See Lombardi, 5 F.3d at 573 ("While ___ ________ the judgment requiring restitution may be fruitless, it may also be of some use if [the defendant] ever secures new assets . . . . In all events, the statute merely requires the court to 'consider' financial condition, among other factors; there is no requirement that the defendant be found able to pay now.") (citations omitted). Newman further argues that, even if the district court adequately considered his ability to pay, the court erred in fixing the amount of restitution at $489,179, as that amount far exceeds the unlawful transfers for which he was convicted. Newman notes that, in this circuit, restitution under the pre-November 1990 version of 3663(a) is limited only to loss caused by the conduct for which the defendant has been convicted. United States v. Cronin, 990 _____________ ______ F.2d 663, 666 (1st Cir. 1993).14 The $489,179 represents all of the sums paid out by RPLIC as a result of Newman's fraudulent scheme. However, the indictment charges Newman  ____________________ 14. As the offenses occurred in 1989 and early 1990, Newman is subject to the restitution statute as it stood prior to amendment in November of 1990 by Pub. L. No. 101-647, 2509, 104 Stat. 4789, 4863 (1990). -25- 25 only with the diversion of $184,300. Thus, Newman argues, the court erred in charging Newman with the entire sum. We agree. Under the law in this circuit, the district court should have fixed the amount of restitution at $184,300, the amount that Newman was convicted of diverting. See Cronin, 990 F.2d at 666. The government concedes that ___ ______ under Cronin restitution is limited to that lesser sum, but ______ urges nonetheless that we adopt the alternative position, taken by a minority of circuits, under which a court may award restitution for all of the harm caused by the scheme to defraud, not simply the specific harm for which the defendant was convicted. See, e.g., United States v. Stouffer, 986 ___ ____ ______________ ________ F.2d 916, 929 (5th Cir.), cert. denied, 114 S. Ct. 115 _____________ (1993). In most circumstances, a panel in this circuit is bound to adhere to precedent established by a prior panel unless departure is mandated legislatively or by the Supreme Court. The en banc court alone can reconsider circuit precedent. We follow our precedent in Cronin. ______ III. III. For the reasons set forth above, we affirm Newman's conviction. We also affirm all aspects of Newman's sentence except: (1) the restitution order, which we direct the district court to reduce from $489,179 to $184,300; and (2) the order to pay the costs of supervised release, which we -26- 26 direct the district court to vacate per the government's request, see supra, note 7. ___ _____ So ordered. __________ -27- 27