Desrocher v. Manchester Body & Fender CV-94-604-SD 12/21/95
UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Anthony Desrocher;
Vicki Desrocher

    v.

Manchester Body & Fender,Inc.;
Thomas Redburn                           Civil No. 94-604-SD

    v.

Anthony Cilwa;
Travelers Insurance Company


O R D E R


This civil action was initiated by plaintiffs Anthony and Vicki Desrocher in Hillsborough County (New Hampshire) Superior Court, but was subsequently removed to this court by third-party defendant Travelers Insurance Company due to alleged preemption of the state-law claims by the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001, et seq. (1988 & Supp. V).[1] Once in federal court, Travelers moved for summary judgment as to the third-party

_____

[1]In their state court writ, plaintiffs alleged three different causes of action: (1) negligence; (2) breach of fiduciary duty; and (3) fraud.

indemnification complaint on ERISA preemption grounds.[2]

Before the court could rule on said motion, plaintiffs amended their complaint, supplementing the three previously alleged state-law claims with a fourth claim under ERISA.[3] Subsequent to this amendment, Travelers, MB&F, and Redburn filed motions for summary judgment[4] as to the state-law claims (Counts I-III) of the amended complaint. Thus, presently before the court are: (1) Travelers motion for summary judgment as to the third-party indemnification claim; (2) Travelers' motion for summary judgment as to plaintiffs' state-law claims; and (3) MB&F and Redburn's motion to dismiss plaintiff's state-law claims.[5]

---

[2]As stated by Travelers, if plaintiffs' state-law claims were preempted by ERISA, then the indemnification claim could not lie for want of an underlying cause of action.

[3]Manchester Body & Fender, Inc. (MB&F) and Thomas Redburn filed an objection to Travelers' motion which, in essence, petitioned the court to defer ruling on the motion until the plaintiffs had filed their amended complaint.

[4]The court notes that MB&F and Redburn's motion is actually denominated a "Motion to Dismiss".

[5]Although plaintiffs have filed an objection to Travelers' second summary judgment motion, no objection has been interposed to that of MB&F and Redburn. However, insofar as it incorporates by reference Travelers' memorandum of law, and plaintiff's objection is specifically directed thereto, the court will consider all of the pending motions under the summary judgment standard.

2

<u>Background</u>[6]

Until May 1994, plaintiff Anthony Desrocher was employed by defendant MB&F as a painter and body specialist, working in that capacity under the direct supervision of defendant Thomas Redburn. While so employed by MB&F, plaintiff participated in the health insurance plan offered through the Travelers Insurance Company.

In or about June 1991, a Request for Group Insurance--Health Statement and Employment Card was submitted to Travelers purportedly on behalf of the Desrochers. Said card, subscribed by the alleged forged signatures of both Anthony and Vicki Desrocher, indicated a preference on their part to not include their daughter Laura as a beneficiary under the plan.

Some time subsequent to the submission of the insurance paperwork to Travelers, Laura Desrocher was hospitalized and ultimately diagnosed as having pulmonic stenosis, patent foramen ovale.[7] As a result of this initial hospitalization, plaintiffs

---

[6]Unless otherwise noted, this statement of facts is taken from plaintiffs' original state court writ and is included by the court solely for orientation purposes. In so doing, no findings as to the truth of any of said background facts are either expressly or impliedly made.

[7]A pulmonary stenosis is described as a "narrowing of the opening between the pulmonary artery and the right ventricle, usually at the level of the valve leaflets." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1576 (28th ed. 1994).

became apprised of the fact that, unbeknownst to them, their daughter was indeed not covered under the medical insurance policy issued by Travelers. Plaintiffs maintain they neither signed the insurance card nor ever indicated in any way to any of the defendants a desire on their part to exclude their daughter from their medical insurance coverage.

Consequently, plaintiffs have both incurred a vast amount of medical bills and, due to what is now a pre-existing condition, are unable to obtain alternate insurance coverage for their daughter. The amended four-count complaint filed in this court seeks equitable relief in the form of policy coverage, both past and future, as well as compensatory relief for, inter alia, past medical bills and expenses.

## Discussion

### 1. Summary Judgment Standard

Summary judgment shall be ordered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

4

trial.'" <u>Stone & Michaud Ins., Inc. v. Bank Five for Savings</u>, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). Although "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal," <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994), the entire record will be scrutinized in the light most favorable to the nonmovant, with all reasonable inferences indulged in that party's favor, <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 1958 (1995); <u>see also</u> <u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 259 (1st Cir. 1994); <u>Maldonado-Denis</u>, <u>supra</u>, 23 F.3d at 581.

"In general . . . a party seeking summary judgment [is required to] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." <u>National Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)), <u>cert. denied</u>, ___ U.S. ___, 115 S. Ct. 2247 (1995).

> A "genuine" issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. <u>Maldonado-Denis</u>, 23 F.3d at 581. In

5

> other words, a genuine issue exists "if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" Id. (quoting Garside [v. Osco Drug, Inc.,] 895 F.2d [46,] 48 [1st Cir. 1990)]. A "material" issue is one that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995).

Although summary judgment is inappropriate when a trialworthy issue is raised, "[t]rialworthiness necessitates 'more than simply show[ing] that there is some metaphysical doubt as to the material facts.'" National Amusements, supra, 43 F.3d at 735 (quoting Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (alteration in National Amusements). Thus, "'[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve . . . .'" Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Accordingly, "purely conclusory allegations, . . . rank speculation, or . . . improbable inferences" may be properly discredited by the court, id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)), and "'are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v.

6

<u>Offices Unlimited, Inc.</u>, 981 F.2d 576, 580 (1st Cir. 1992)).


## 2. ERISA Preemption

As previously stated, plaintiffs filed their original complaint in state court, grounding same in common-law negligence, breach of fiduciary duty, and fraud. Upon removal of the action to this federal court, and in the face of Travelers' motion for summary judgment as to MB&F and Redburn's indemnification claim, plaintiffs amended the original complaint to include a new count under ERISA, but similarly retained the three original state-law theories.[8]


### a. The Scope of Preemption

"Congress enacted ERISA to protect the interests of participants in employee benefit plans (including the interests of participants' beneficiaries)." <u>Johnson v. Watts Regulator Co.</u>, 63 F.3d 1129, 1132 (1st Cir. 1995) (citations omitted). "An integral part of the statutory scheme is a broadly worded

---

[8]The court notes that in the amended complaint "plaintiffs hereby name all defendants (including third-party defendants) as directly liable parties for all Counts I through IV in the Complaint and Amended Complaint." Amended Complaint ¶ 2. Accordingly, Travelers' motion for summary judgment on the third-party complaint (document 21) is denied as moot, having been superseded by plaintiffs' amended complaint and effectively supplanted by their July 31, 1995, motion for summary judgment as to Counts I-III of same.

preemption clause that, in respect to covered employee benefit plans, sets to one side 'all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.'" Id. (quoting 29 U.S.C. § 1144(a)).

Since the "purpose of the preemption clause is to enhance the efficient operation of the federal statute by encouraging uniformity of regulatory treatment through the elimination of state and local supervision over ERISA plans," id. (citations omitted), "ERISA preemption may cause potential state-law remedies to vanish," id. at 1131 (citations omitted); see also New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., ___ U.S. ___, ___, 115 S. Ct. 1671, 1678 (1995) ("state laws providing alternate enforcement mechanisms also relate to ERISA plans, triggering pre-emption").

"Generally, state laws that provide alternative cause(s) of action for beneficiaries seeking to collect or enforce plan benefits have been deemed preempted." Berlin City Ford, Inc. v. Roberts Planning Group, 864 F. Supp. 292, 295 (D.N.H. 1994) (collecting cases). "On the other hand, state laws of general application that have only an incidental effect on the administration of ERISA plans and that do not affect relationships between a plan's fiduciaries and its beneficiaries have been ruled to be not preempted." Id. (collecting cases).

8

"As succinctly stated by the Fifth Circuit, a participant's 'efforts to collect medical benefits "relate to an employee benefit plan" and thus come within the scope of ERISA's express preemption provision.'" Charlton Memorial Hosp. v. Foxboro Co., 818 F. Supp. 456, 461 (D. Mass. 1993) (quoting Ramirez v. Inter-Continental Hotels, 890 F.2d 760, 762 (5th Cir. 1989)) (other citations omitted).

### b. The "Relation" to ERISA

In an effort to side-step the preemptive reach of ERISA, and thus avoid summary judgment, plaintiffs attempt to recast their state-law claims by "direct[ing] the inquiry of the court to the fact of the forged signature at issue, and the fact that this forgery induced the plaintiffs to provide no alternative health insurance coverage for their daughter Laura." Objection at 3-4.[9] Consequently, plaintiffs continue, "the defendants' liability here turns on the fact of the forged signature and the duties owed by the defendants regardless of the terms of the health insurance policy here at issue." Id. at 4.

Countering this version of plaintiffs' position is not, as would be expected, some alternative characterization of the claim

---

[9]In that the plaintiffs did not become aware of the forgeries until after their daughter Laura was hospitalized, whether the alleged forgeries can be said to have induced such inaction on plaintiffs' part is doubtful.

9

offered by the defendants, but rather plaintiffs' own allegations in setting forth a claim under ERISA in their Amended Complaint. In said pleading, plaintiffs maintain:

> 7.  The plaintiffs are empowered by 29 U.S.C.S. 1332 to bring into civil action to recover benefits due them under the terms of the plans and to enforce and clarify his rights under the terms of the plan for any future benefits under the terms of the plan and for any other relief that is just and necessary.  The plaintiffs may also be entitled to enjoin any act or to obtain equitable relief.
>
> 8.  The plaintiff, Anthony Desrocher, was employed as a painter and body specialist by the defendant, Manchester Body & Fender, Inc.  The plaintiff never signed any health statement document nor was it ever communicated to the defendant/employer or its agents their intention that their daughter, Laura Desrocher, not be insured for medical coverage through the defendant/employer and the Traveler's Insurance Company.  Forged insurance paperwork and documentation was provided to the Traveler's Insurance Company that indicated that the plaintiffs' child, was not to be insured for medical coverage through the Traveler's Insurance  Company.
>
> 9.  The defendants, Manchester Body and Fender, Inc., Thomas Redburn, and Anthony Cilwa and Traveler's Insurance Company all had a responsibility and obligation to the plaintiffs to provide health insurance to the plaintiffs.
> .  .  .  .
> 10.  After the insurance paperwork was submitted to the Traveler's Insurance Company by the defendant/employer, the plaintiffs' daughter became ill and required hospitalization.  The daughter, Laura Desrocher, was diagnosed as having several serious medical health problems.  The plaintiffs have suffered extensive bills and

10

are expected to suffer substantial medical bills in the future for the care of their minor child.

11. As a result of all of the defendants' actions, the plaintiffs' daughter remains uninsured and medical expenses continue to increase.

12. As a result of all of the actions outlined in Counts I through IV herein, the defendants are liable for the appropriate equitable relief and damages, as well as enforcement of any provision of 29 U.S.C.S. 1101, et. seq. Specifically, the defendants are liable for coercive interference under Section 1141, failure to give notice under Section 1166, breach of Section 1106, and 1109, and for delinquent contributions under Section 1145 and others.

Amended Complaint ¶¶ 7-9, 11-12.

No attempt has been made to explain or to reconcile this apparent conflict in plaintiffs' legal position. In the view of the court, reconciliation is not possible. To the extent that plaintiffs' state-law claims seek equitable and compensatory relief in the form of plan coverage, past as well as future, and payment of past medical expenses, such claims "relate to" a benefit plan, as that term has come to be defined under Shaw v. Delta Airlines, Inc., 463 U.S. 85 (1983), and its progeny. See, e.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985).

Plaintiffs' claims are, at bottom, grounded in fraud, a subcategory of which is misrepresentation. Plaintiffs believed their daughter to be covered under their medical insurance plan

11

when indeed it appears that she was not.  Here, as in <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir. 1994), "[t]here is simply no cause of action if there is no plan."

According to the First Circuit, "ERISA's 'deliberately expansive' preemption language was 'designed to "establish pension plan regulation as exclusively a federal concern,"'" <u>Carlo v. Reed Rolled Thread Die Co.</u>, 49 F.3d 790, 794 (1st Cir. 1995) (quoting <u>Pilot Life</u>, <u>supra</u>, 481 U.S. at 46 (quoting <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 (1981))), and this preempts misrepresentation claims "because they 'relate to' an employee benefit plan," <u>id.</u>;[10] <u>cf.</u> <u>Farr v. US West, Inc.</u>, 58 F.3d 1361, 1365 (9th Cir. 1995) ("laws that provide remedies for misconduct growing out of the administration of ERISA plans" are held to be type of state law "relating to" ERISA plan and thus preempted); <u>Forbus v. Sears, Roebuck & Co.</u>, 30 F.3d 1402, 1406 (11th Cir. 1994) (fraud regarding employer's reasons for job

---

[10]Plaintiffs' citation to <u>Mt. Carmel Medical Ctr. v. Auddino</u>, 558 N.E.2d 74 (Ohio Ct. App. 1988), is unavailing if only because the circuit has specifically rejected its premise-- in certain circumstances plaintiff may have no ERISA claim and have other claims preempted by ERISA--as a basis for denying preemption. <u>See</u> <u>Carlo</u>, <u>supra</u>, 49 F.3d at 794 ("The courts finding against preemption have been troubled by the fact that ERISA preemption in these benefit misrepresentation suits often leaves plaintiffs remediless . . . . Despite the cogent arguments against preemption in misrepresentation claims, we nevertheless find that ERISA preempts [such] claims because they 'relate to' an employee benefit plan.").

elimination rather than concerning an ERISA plan not preempted by the federal law), cert. denied, ___ U.S. ___, 115 S. Ct. 906 (1995).

As plaintiffs have acknowledged in Count IV of their amended complaint, defendants' alleged actions "relate to the existence of the 1991 Plan and in order to prevail under [their] state common law claim[s] . . . [the Desrochers] would undoubtedly have to plead, and the Court would have to find, that the 1991 Plan exists." Vartanian, supra, 14 F.3d at 700 (citation omitted). Insofar as plaintiffs' state-law claims "relate to" an ERISA plan, they are expressly preempted. Id.; see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). Accordingly, both the motion for summary judgment filed by defendant Travelers (document 38) and the motion to dismiss filed MB&F and Redburn (document 40) must be and herewith are granted.

## Conclusion

For the reasons set forth herein, Travelers' motion for summary judgment (document 38) and MB&F and Redburn's motion to dismiss (document 40) are herewith granted. Travelers' prior motion for summary judgment as to indemnification (document 21) is denied as moot. Plaintiffs' case shall go forward solely on

13

the ERISA claim as most recently alleged in Count IV of the amended complaint.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 21, 1995

cc:    Peter G. McGrath, Esq.
       H. Jonathan Meyer, Esq.
       Anthony Cilwa, pro se
       Edward P. O'Leary, Esq.